**Petition of George LA PLATA.**
**Writ of Habeas Corpus on Behalf of**
**Gordon FISHER.**
**No. 18706.**

United States District Court
E. D. Michigan, S. D.
June 30, 1959.

George La Plata, Carl Rhoads, Detroit, Mich., for petitioner.

Fred W. Kaess, U. S. Atty., Peter B. Spivak, Asst. U. S. Atty., Detroit, Mich., for respondent.

LEVIN, District Judge.

This is a petition for a writ of habeas corpus filed by Gordon Fisher, based on the contention that he was unlawfully taken into custody by the United States Marine Corps Police.

Petitioner enlisted in the Ready Reserve of the United States Marine Corps on January 3, 1957 for a period of six years. The training requirements and obligations of members of the Ready Reserve are set out in Sec. 270 of Title 10 U.S.C. which provides as follows:

"(a) Except as specifically provided in regulations to be prescribed by the Secretary of Defense, or by the Secretary of the Treasury, with respect to the Coast Guard when it is not operating as a service in the Navy, each person who is inducted, enlisted, or appointed in an armed force after August 9, 1955, and who becomes a member of the Ready Reserve under any provision of law except section 269(b) of this title, shall be required, while in the Ready Reserve, to—

"(1) participate in at least 48 scheduled drills or training periods during each year and serve on active duty for training not more than 17 days during each year; or

"(2) serve on active duty for training not more than 30 days during each year.

"(b) A member of the Ready Reserve covered by this section, other than one enlisted under section 456 (c)(2)(C) of title 50, appendix, who fails in any year to satisfactorily perform the training duty prescribed in subsection (a), as determined by the Secretary concerned under regulations to be prescribed by the Secretary of Defense, may be ordered without his consent to perform additional active duty for

training for not more than 45 days. If the failure occurs during the last year of his required membership in the Ready Reserve, his membership is extended until he performs that additional active duty for training, but not for more than six months. Added Pub.L. 85–861, § 1(5) (A), Sept. 2, 1958, 72 Stat. 1438."

Upon his enlistment he signed a "Letter of Understanding" that he was subject to these training requirements.

From January 1958 through March 1958 his service was unsatisfactory. In March of 1958 orders were issued by the Commander, Marine Air Reserve Training, directing petitioner to report for additional active duty training as authorized by Sec. 270(b) of Title 10 U.S.C. Upon receipt of these orders he reported to the Marine Air Reserve Detachment in Grosse Ile and pleaded hardship due to the pregnancy of his wife. He requested an opportunity to continue in the reserve program and stated that, if his orders to report for active duty were cancelled, he would satisfactorily perform the required number of drills in the future. The Commanding Officer, Marine Air Reserve Detachment, in the exercise of his discretion, cancelled the orders.

From April through September 1958 petitioner's service continued to be unsatisfactory, and in September 1958 petitioner's Commanding Officer again requested that the Commander, Marine Reserve Training issue orders calling petitioner to active duty. Orders were issued on October 6, 1958, directing petitioner to report for forty-five days of active duty on January 8, 1959. Petitioner failed to appear for duty as directed and the Marine Corps Police took petitioner into custody.

It is the position of the United States Marine Corps that petitioner was subject to the Uniform Code of Military Justice and therefore lawfully taken into custody for failure to comply with the orders issued on October 6, 1958, by virtue of Title 10 U.S.C., Sec. 802, Art. 2 (formerly Title 50 U.S.C., Sec. 552, Art.

2), which provides that the following persons are subject to the Uniform Code of Military Justice:

"(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; *and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.*" (Emphasis added).

▇ Petitioner, however, states that he cannot be taken into custody for failure to obey the orders issued to him because he did not voluntarily accept them, and in support of this contention he relies on Art. 2(3) of Section 802 which provides that reserve personnel are subject to the Uniform Code of Military Justice "while they are on inactive duty training authorized by written orders which are voluntarily accepted by them and which specify that they are subject to this chapter." An examination of the applicable statutory provisions makes it clear that petitioner's contention is without merit.

Section 802, Art. 2 of Title 10 U.S.C. details in twelve subsections those classes of persons who are subject to the Uniform Code of Military Justice. No one subsection is intended to limit the application of any other subsection. Each subsection provides for the inclusion of a separate and distinct class of persons.

▇▇ Subsection 3, relied on by petitioner, *does not apply to reservists who are called to active duty training.* The legislative history reveals that Congress intended that subsection 3 apply to inactive reservists who merely attended short periodic drills or training, participated in week-end flights or who handled dangerous or expensive equipment. See, H.R. No. 491, 81st Cong., 1st Session

(1949) P. 5, 10; Sen.Rep. No. 486, 81st Cong., 1st Session (1949) P. 4, 5, 7, 8; see, also, Hearings before Subcommittee, House of Representatives Committee on Armed Forces on H.R. 2498, 81st Cong., 1st Session (1949) P. 708, 747, 834, 835, 860; Hearings before Subcommittee of Senate Committee on Armed Services on S. 857 and H.R. 4080, 81st Cong., 1st Session (1949) P. 97, 154, 155, 327, 329. It was not intended that subsection 3 apply nor does it apply to reservists called for active duty training. Petitioner was ordered to perform additional active duty for training under the authority of Section 270. He was, therefore, a person lawfully "ordered into, or to duty in or for training in, the armed forces * *" within the meaning of Sec. 802, Art. 2(1) and, therefore, subject to the Uniform Code of Military Justice.

Petitioner in effect asserts that it was the intention of the legislature that he be permitted to enlist voluntarily in the reserve program for a specified period of time and ignore the orders of his superior officers without fear of discipline. To construe Sec. 802, as urged by petitioner, would render nugatory Sec. 270 and would seriously impair, if not completely destroy, the reserve training program. A reading of Secs. 270 and 802 makes it clear that such was not the congressional intent.

■ Petitioner also contends that Sec. 271 of Title 10 U.S.C. which provides for continuous screening of the Ready Reserve under regulations prescribed by the President to insure that:

"(5) members whose mobilization in an emergency would result in an extreme personal or community hardship are not retained in the Ready Reserve."

in effect repealed Sec. 270 of the same title.

Sec. 271(5) merely permits the Service to release a member of the Ready Reserve prior to the completion of his enlistment period upon a finding of extreme personal or community hardship. It does not otherwise affect the obligations assumed by the enlistee.

It was stipulated that petitioner is the sole support of his wife and three children. Petitioner asserts that this fact entitled him to a release from the Ready Reserve on the ground of extreme personal hardship. An application for release upon the ground asserted here must be addressed to those authorized by Congress to consider and determine this question, pursuant to the applicable regulations. It is not a matter within the jurisdiction of this court.

An order will be entered denying the writ of habeas corpus and remanding petitioner to the custody of the Commanding Officer, Marine Air Detachment, United States Naval Air Station, Grosse Ile, Michigan.