**Application of James E. STAPLEY, P.F.C., United States Army, for a Writ of Habeas Corpus.**

**No. C 188–65.**

United States District Court
D. Utah,
Central Division.

Oct. 1, 1965.

---

James P. Cowley, Salt Lake City, Utah, for petitioner.

Ralph Klemm, Asst. U. S. Atty., for respondent.

CHRISTENSEN, District Judge.

This case involves the question of whether the Sixth Amendment to the Constitution of the United States requires the appointment of counsel to represent military personnel on serious charges before special as well as general courts-martial and, if so, whether minimal constitutional requirements were met in this case with respect to the qualification and representation of appointed counsel.

The case for good cause came on for expedited hearing before this court pursuant to rule on the 17th day of September, 1965. The petitioner James E. Stapley was present in person and was represented by his counsel, James P. Cowley, Esquire. The respondent was represented by Ralph Klemm, Esquire, Assistant United States Attorney for the District of Utah and by a representative of the command under which the petitioner served. Evidence, both oral and documentary, was received, and arguments were heard. Whereupon the court, being fully advised in the premises, announced its decision, and now in accordance with such oral decision, makes and enters the following written

## FINDINGS OF FACT

1. James E. Stapley, Private First Class, United States Army, assigned to the U.S. Army Garrison (6001–00) Ft. Douglas, Utah, on July 29, 1965, was arraigned and tried before a special court-martial for violation of the Uniform Code of Military Justice, Articles 86, 90, 117, 123 and 134. While a general court-martial was not involved, these charges were substantial and serious, involving not only breaches of military orders and discipline, but also repeated acts of claimed fraud in the issuance of checks some of which, if established, could have constituted felonies in a civil court and all of which imputed moral turpitude. Such charges involved problems of substantive law as well as practice, reasonably necessitating knowledgeable legal counsel, advice, and assistance.

2. The petitioner Stapley at the time he faced these charges was of the age of nineteen years, apparently immature even for this age, suffering from emotional difficulties, and of limited experience notwithstanding his prior exemplary service as a trainee and in Korea. There had been no previous experience on his part with disciplinary problems or with proceedings under the Code of Military Justice as far as the record discloses.

3. When the charges were first served upon petitioner by trial counsel he requested the appointment of a lawyer as defense counsel but this request was not granted. There were appointed as his defense counsel and assistant defense counsel, respectively, a captain and a second lieutenant from the command under which petitioner served. The captain had been in service about two years. He was a veterinarian without training or experience in, or acquaintanceship with, legal proceedings of any kind. He was naive and unknowledgeable with regard to legal matters, devoid of experience with them, possessed no aptitude with respect to such matters, and was uncertain of his functions or duties. He estimated that his total training as an officer in military law had been accomplished in two days. The second lieutenant was at the time twenty-two years of age, had been in the service

about one year, and, while he had had academic background in history and political science and had studied the Code of Military Justice in an R.O.T.C. program, he had no special knowledge or ability in these fields and no practical experience whatsoever in legal matters or procedures. Moreover, it appears that he deferred largely to the senior officer. Neither defense counsel had any experience before or with any court-martial or in advising persons charged with offenses. Their advice to the accused on various legal matters was based upon consultation with the officer who had drawn up the charges, and probably was garbled in its being so relayed, as was illustrated by the captain's concept that intoxication could be no defense for a "specific intent" crime. And counsel advised the accused to plead guilty to all charges, including one thereafter ordered dismissed by the convening authority for legal insufficiency to state an offense.

4. The defendant upon a preliminary consultation with his assigned counsel requested that he be permitted to have qualified attorneys to represent him, but was told that there was none available to him from the military service and that if he wished a civilian attorney he would have to pay approximately $150.00 for his services, which the accused was financially unable to do. The accused was further advised not to raise any question with regard to his legal representation with the convening authority or before the court-martial; that he should not request any non-commissioned officer upon the court because it would go harder with him if he did, that he should enter into a "deal" with the commanding officer to return pleas of guilty to all charges in return for an agreement that if he were sentenced to more than two months confinement, his sentence would be commuted to that sentence.

5. The accused, petitioner herein, entered into such an agreement and pursuant to the suggestion of his attorneys made no statements other than "Yes sir" or "No sir" before the court-martial but entered pleas of guilty to all charges,

except for one which had been dismissed pursuant to the order of the commanding officer because patently insufficient on its face. Before the court-martial when the accused was asked whether he had any objection to defense counsel, defense counsel himself answered "no", although the accused probably would have given the same answer in view of the prior conversation with defense counsel concerning his request for other counsel and the belief that defense counsel's views in this and other matters should be accepted. Defense counsel was assigned approximately one week before the trial and spent several days studying the Code of Military Justice and the Manual for Courts-Martial and otherwise attempting to properly advise or represent the accused and there is no doubt that both he and the assistant defense counsel were in good faith in attempting to properly handle the case. Trial counsel representing the prosecution were not certified counsel, nor were they lawyers, and the evidence does not otherwise indicate their qualifications or competency.

6. The consultations with his assigned "counsel" did not involve counseling or legal advice in any proper sense. The services of "defense counsel" did not constitute the assistance of counsel, in any proper sense. Notwithstanding the conscientious attitude of his assigned counsel they were wholly unqualified to act and failed to act as "counsel" with respect to military law, procedure, trial or defense practicality, or at all.

7. The trial before the court-martial notwithstanding that all participants acted in good faith, constituted no more than an idle ceremony or form in accordance with a script arranged beforehand, and limited and determined by defense counsel in their instructions for the accused not to raise any problems or to make any statement except "Yes sir" or "No sir" to questions asked, the pre-trial agreement with the commanding officer and the pleas of guilty agreed upon pursuant thereto. By reason of the circumstances above mentioned, the representation of the accused by defense counsel

was in the nature of a mere mockery or sham and did not in fact or law constitute representation by "counsel" either civil or military.

8. Upon the petitioner's pleas of guilty he was adjudged and found guilty by the special court-martial of all charges and specifications then pending and was sentenced to be confined at hard labor for three months and to forfeit $55.00 per month of his pay for six months and to be demoted. No appeal or proceeding for review were advised by counsel or taken by the accused, although the accused was advised of his rights to review in accordance with the provisions of paragraph 48j(3), MCM 1951. Pursuant to the pre-trial agreement the convening authority, petitioner's commanding officer, declined to approve the sentence imposed by the court-martial in excess of confinement at hard labor for two months and forfeiture of two-thirds pay per month for two months with reduction to the lowest enlisted grade. The petitioner or his counsel did not take any proceedings for review of his conviction or sentence through military channels but petitioner could not reasonably be considered barred from recourse to this court for failure to exhaust military remedies under the circumstances of this case.

9. At the time of the issuance of an order to show cause why a writ of habeas corpus should not be entered, and at the time of the hearing upon said order to show cause, and at the time of granting of the writ, the petitioner was in custody under said sentence.

From the foregoing Findings of Fact, the court now makes and enters the following:

## CONCLUSIONS OF LAW

1. That federal courts, and particularly United States District Courts have not been invested by the Constitution or laws of the United States with power to review the regularity or legality of proceedings before military tribunals. That the only jurisdiction of this court to consider such matters is inquiry and ruling upon application for writs of habeas corpus by persons held in confinement under order or sentence by military tribunals proceeding without jurisdiction in violation of rights guaranteed by the Constitution of the United States. That notwithstanding the limited scope of such jurisdiction, the vindication of constitutional rights through such inquiry and rulings in proper cases transcends ordinary limitations and affords federal courts both the jurisdiction and the duty to inquire and rule upon the legality of detainment of any person entitled to constitutional protection whether in or out of military service.

2. That the Sixth Amendment to the Constitution of the United States applies to proceedings before special courts-martial in the military service, as far as concerns the right to the assistance of counsel on the part of an accused, particularly where the charges are substantial or involve moral turpitude or may result in a substantial deprivation of liberty. The charges brought against the accused petitioner were of such character.

3. That the right to counsel of one charged with crime before a military tribunal is as fundamental to a fair trial as before a civilian court and while military exigency may to an extent condition such right, it cannot obliterate it; on the contrary such exigency often renders constitutional protection all the more indispensable. Nor is such right limited to spectacular or especially extreme cases, for in our citizens army the cumulative effect of repeated constitutional violations, even in supposedly little cases, looms large in its eroding effect.

4. The circumstances of this case render it unnecessary to decide whether before such tribunals under all circumstances an accused is entitled to be represented by counsel who have been trained and admitted to practice before a civilian court, although the training, experience, code of conduct, and professional conditioning of such attorneys seems most conducive to the necessities for the type

of representation reasonably to be expected. It is sufficient here to consider only whether under the peculiar circumstances of this case, and in view of the frustration of petitioner's efforts to obtain qualified legal services because of his financial inability to pay for them, minimal requirements of due process particularly in view of the Sixth Amendment, required that counsel made available to the petitioner had requisite competency or qualification in military or civilian laws and proceedings, or both, beyond that common to every officer in the military service.

5. That minimal requirements of due process and the Sixth Amendment are not satisfied by the assignment as counsel to an accused of officers with substantially no experience, training or knowledge in the field of law, either military or civilian. That with the increasing personnel in the military service, the rapidity and ease of transportation and the training facilities and techniques readily available for specialized training or experience, it is no longer either reasonable or necessary, if it ever were, to deem any officer qualified to act as defense counsel for an accused merely because he is an officer; nor is it either reasonable or necessary to limit the availability of qualified defense counsel to cases in which the prosecution is represented by qualified counsel. That an accused has the right to be reasonably advised concerning charges even though they are filed inadvisedly and prosecuted unintelligently, and in the latter event sometimes he needs qualified counsel all the more.

6. That the apparent evidence or proofs arrayed against a defendant prior to trial or the possibility or probability of guilt do not dispense with the necessity for qualified counsel nor the right thereto; nor does the fact that pleas of guilty have been entered waive or ratify deprivation of the right to counsel.

7. That the qualifications of appointed defense counsel in the court-martial of James E. Stapley were not adequate to constitute them "counsel" as that term is used and contemplated in the Sixth Amendment to the Constitution of the United States and as required by due process, but that on the contrary the representation of the accused was in the nature of idle form or mockery.

8. That "military due process", while within the competence of Congress to establish in view of military necessity, must comport with minimal requirements of constitutional due process to render it immune from attack in the courts when inconsistent confinement of military personnel is involved.

9. That not only in proceedings involving general courts-martial, or the possibility of dishonorable or bad conduct discharges, but also in proceedings before special courts-martial where substantial criminal charges are to be tried involving claimed moral turpitude or the risk of substantial incarceration is the availability of counsel a constitutional requirement.

10. That withdrawn from its problems and responsibilities, courts could easily become insensitive to military necessity, and no jurisdictional doctrine would be practical without recognition of this danger. Yet it can safely be recognized within the limits of this ruling that the assignment of defense counsel possessing at least minimal qualifications to rationally advise on substantive and procedural legal problems may not be deemed precluded in this day and age in the absence of a showing of overriding military necessity that does not exist here.

11. The precedential [1] structure within, or upon the periphery of which, these

1. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), 84 A.L.R. 527; Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590,

2 L.Ed.2d 630 (1958); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222,

conclusions have been reached, and the competing historical, practical and conceptual considerations [2] that have been taken into account and reconciled insofar as has seemed possible, are indicated in the margin.

12. In sum it appears appropriate, timely and necessary to recognize that it may be repugnant to minimal requirements of due process, even in the military service, for the juridically blind to lead the blind under a system or in a particular command accepting this as a rule rather than a militarily necessitated exception; that the fiat of an appointment of "defense counsel", a military commission, a presidential appointment or even an act of the Congress cannot itself satisfy the demands of the Sixth Amendment that in all criminal prosecutions the accused is "to have the assistance of counsel for his defense"; that this assistance of counsel, however adaptably we may interpret the term in view of military expediency, cannot be constitutionally debased to mean the substantial absence of any legal assistance, the mere shell or shadow of counsel or no more than a semantic illusion; and that the military service in these respects may not be considered a constitutionally uninhabitable wasteland beyond the scan of even the Great Writ where the court is powerless to reach out a protective hand.

13. That by reason of the violation of petitioner's constitutional rights the special court-martial acted without jurisdiction; that petitioner was at the time of the hearing and the granting of the writ of habeas corpus illegally detained and deprived of his liberty contrary to the Constitution of the United States and that he was and is entitled to discharge from such detention by writ of habeas corpus.

ORDERED: That the petitioner is discharged from confinement.

---

1 L.Ed.2d 1148 (1957); United States v. Culp, 14 USCMA 199, 33 CMR 411 (1963); United States v. Kraskekas, 9 USCMA 607, 26 CMR 387 (1958); United States ex rel. Guagliardo v. McElroy, 158 F.Supp. 171 (D.C.D.C.1958).

2. Chief Justice Earl Warren, The Bill of Rights and the Military, 37 N.Y.U.L.

Rev. 181 (1961); Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv.L.Rev. 293 (1957); Avins, Accused's Right to Defense Counsel Before a Military Court, 42 U.Det.L.J. 21 (1964); Cf. Wiemer, Courts-Martial and the Bill of Rights, 72 Harv.L.Rev. 1 (1958).