Michael T. LeBALLISTER, Petitioner,

v.

The WARDEN, UNITED STATES DISCIPLINARY BARRACKS, LEAVENWORTH, KANSAS, Respondent.

No. 3919 H. C.

United States District Court
D. Kansas.

Nov. 22, 1965.

Roy Cook, Kansas City, Kan., for petitioner.

Lt. Col. Abraham Nemrow, JAGC, Washington, D. C., and Benjamin E. Franklin, Asst. U. S. Atty., Topeka, Kan., for respondent.

ARTHUR J. STANLEY, Jr., Chief Judge.

The petitioner in this habeas corpus proceeding is now in the custody of the respondent by virtue of two convictions by separate special courts-martial, each resulting in a sentence of confinement for a period of six months and forfeiture of pay. The facts are not disputed. The sole question presented is whether the Sixth Amendment to the Constitution of the United States requires that an accused before a special court-martial be represented by legally trained counsel.

On November 1, 1965, the court, after argument, announced its decision. The court now makes and enters its

### FINDINGS OF FACT:

1. The petitioner enlisted on February 14, 1965 for a term of six years in the Army National Guard of the State of Nevada and as a Reserve in the Army for service in the Army National Guard of the United States. On that date he agreed to enter on active duty for training for a period of approximately 26 weeks and, after completing the active duty training, to serve in the Ready Reserve for the remainder of his six-year military service obligation.

2. By direction of the Secretary of the Army and with the consent of the petitioner and the Governor of the State of Nevada, the petitioner was ordered to active duty for training effective April 1, 1965, and attached to the U. S. Army Training Center, Infantry, at Fort Ord, California, for basic combat training. Pursuant to such orders, petitioner reported for active duty and was attached to Headquarters and Headquarters Company, 3d Battalion, 3d Brigade, effective April 8, 1965.

3. The petitioner was a soldier in the active military service of the United States at the time he committed the offenses and at the time of trial by special courts-martial. He was, therefore, subject to the jurisdiction of the United States Army.

4. The special courts-martial which tried the petitioner were properly constituted, had jurisdiction over the petitioner and of the offenses charged against him, and the sentences adjudged against the petitioner by the courts-martial were within legal limits and within the power of the courts-martial to adjudge.

5. The first special court-martial was constituted by Court-Martial Appointing Order No. 10, Headquarters, 3d Brigade, and the second by Court-Martial Appointing Order No. 12, of the same Headquarters. The officers appointed as trial counsel and as defense counsel were all infantry officers and were not judge advocates, graduates of an accredited law school, or members of the bar of any court.

6. At his first trial (by the court appointed by Order No. 10), the petitioner, on May 18, 1965, pleaded guilty to all charges and specifications—absence without leave and disobedience of orders on three occasions. He elected to make a sworn statement in his own behalf, and his counsel made an unsworn statement on his behalf.

7. At his second trial (by the court appointed by Order No. 12), the petitioner, on June 25, 1965, pleaded guilty to two charges of disobedience of orders while confined in the post stockade at Ford Ord, California, serving the sentence imposed by the court-martial at the first trial. He elected to remain silent, and when his counsel attempted to make a statement on his behalf in extenuation and mitigation, the petitioner interrupted and forbade the making of any such statement.

8. The petitioner in his sworn statement at his first trial declared himself as being opposed to the taking of human life, although he rejects the existence of God and disclaims any religious belief. He had filed with his Selective Service Board a "Form for Conscientious Objectors," but had been classified as 1-A. His solution, in his own words, was: "You might now ask why I joined the National Guard. The answer is that I thought the struggle of being accepted as a conscientious objector was hopeless, that nobody would listen or believe, that the legal hassle would cost a fortune. Where in the service is the possibility of ever being ordered to kill anyone (an order I would never obey) the least? My answer was the National Guard. I thought I could go through the motions of being a soldier and nobody would be the wiser. I now realize that to bear any weapon for the Army even in mock battle or training is to admit to them that you will use it to kill. If the situation ever arose where I was face-to-face with a man who wanted my life, I would do everything in my power to disable him, render him unconscious, somehow make it impossible for him to fulfill his desire without killing him." The petitioner's initial date of service was April 1, 1965, just 18 days before his first offense. The violations which led to the preference of charges against him were expressions of his rebellion against authority and were so intended by him.

9. The petitioner is and was at the time of the commission of the offenses charged and at the time of his trials and sentences mentally competent, well educated and sophisticated. He had attended the University of California at Berkeley. He understood fully and at all times the probable consequences of his actions.

10. The petitioner's counsel represented him at each trial ably and as effectively as was possible under the circumstances.

11. The petitioner did not, at either trial, request representation by civilian or military counsel of his own choice.

12. The petitioner did not raise before either court-martial or in any manner within the military establishment any question that his representation by defense counsel was inadequate, nor did he challenge the qualifications of counsel.

13. The record of each trial was reviewed by the Staff Judge Advocate at Fort Ord, California, who determined that the proceedings, findings and sentence in each case were legally correct.

The court makes the following

## CONCLUSIONS OF LAW:

■ 1. Because of the peculiar relationship between military and civil law, the scope of matters open for review in habeas corpus proceedings brought by a military prisoner is limited. Sentences of courts-martial, affirmed by reviewing authority, may be reviewed "only when void because of an absolute want of power, and are not merely voidable because of the defective exercise of power possessed." Carter v. McClaughry, 183 U.S. 365, 401, 22 S.Ct. 181, 195, 46 L.Ed. 236 (1902); Fowler v. Wilkinson, 353 U.S. 583, 584, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957).

2. Congress, under the power "To make Rules for the Government and Regulation of the land and naval Forces," a power expressly granted by Section 8, Article I of the Constitution, has enacted the Uniform Code of Military Justice, 10 U.S.C.A. Chapter 47.

3. Congress is empowered to set the rules governing military trials, and Congress, in Articles 27 and 38 of the Code (10 U.S.C.A. §§ 827 and 838), has prescribed the qualifications of trial and defense counsel and has given the accused the right to representation by civilian or military counsel of his own choice.

4. Petitioner's counsel at both courts-martial met the requirements of Article 27 of the Code (10 U.S.C.A. § 827).

■ 5. An accused before a military court is not entitled as a matter of right under the Sixth Amendment to representation by legally trained counsel. The right of an accused to be so represented at a general court-martial springs not from the Sixth Amendment, but from the action of Congress under Section 8, Article I of the Constitution. No such right is accorded by Congress to one being tried by special court-martial. See United States v. Culp, 14 U.S.C.M.A. 199, 33 C.M.R. 411 (1963).

6. The petitioner has cited the decision of the Honorable A. Sherman Christensen in In re Stapley, D. Utah, October 1, 1965, 246 F.Supp. 316. In that proceeding, Judge Christensen expressly limited his consideration to the peculiar circumstances of the case, including "the frustration of petitioner's efforts to obtain qualified legal services because of his financial inability to pay for them," circumstances not present here.

7. The petitioner was not denied "military due process" at either of his special courts-martial. See United States v. Clay, 1 U.S.C.M.A. 74, 1 C.M.R. 74 (1951).

■ 8. A question not raised in the military courts may not be considered when presented for the first time in an application for habeas corpus in a civil court. "Obviously, it cannot be said that * * * [the military courts] have refused to consider claims not asserted." Suttles v. Davis, 215 F.2d 760, 763 (10th Cir. 1954).

9. The petitioner is lawfully detained by the respondent by virtue of lawful convictions by the special courts-martial.

10. The petitioner is not entitled to a writ of habeas corpus.

The petition is dismissed.