Richard V. MILLER and Jeffrey Greenstein, Plaintiffs,

v.

Nelson ROCKEFELLER, Governor of the State of New York, Commander in Chief of the New York Army National Guard, Martin Forey, General, New York Army National Guard, Lt. Colonel Alfred Rothwell, Commanding Officer, First Battalion, 105 Artillery, and Lt. Colonel Joel Brettschneider, Staff Judge Advocate, New York Army National Guard, Defendants.

No. 70 Civ. 2647.

United States District Court, S. D. New York.

March 8, 1971.

**544**

Kunstler, Kunstler & Hyman, New York City, Steven J. Hyman, New York City, of counsel, Tim Coulter, National Lawyers Guild, New York City, Allan J. Kirschner, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, Robert S. Hammer, Asst. Atty. Gen., of counsel, for defendants.

LASKER, District Judge.

Plaintiffs are enlisted members of the New York Army National Guard who were tried and convicted by a summary court-martial and sentenced to 25 days in jail and a $25 fine for allegedly displaying peace signs during last year's Memorial Day parade.

Plaintiffs now move, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction to enjoin defendants from executing an arrest warrant to incarcerate plaintiffs. Plaintiffs have also requested the convocation of a three-judge court to determine the constitutionality of the New York Code of Military Justice as applied to plaintiffs and, more particularly, of the several summary court-martial provisions thereof pursuant to which plaintiffs were tried, convicted and sentenced. Defendants have moved for an order dismissing the complaint or alternatively for summary judgment in their favor.

This action allegedly arises under the First, Fifth, Sixth and Fourteenth Amendments to the Constitution and Title 42 U.S.C. § 1983. Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202.

Plaintiffs Richard Miller and Jeffrey Greenstein, both residents of New York City, are members of the organized militia of the State of New York, having enlisted in the New York Army National Guard in April 1967 and October 1965, respectively. Both men completed their four months active duty training (basic training) in 1967 and have since returned to civilian life except for attendance at bi-weekly required drills at the Armory and annual two-week summer camps. They are presently assigned to B Battery, 1st Battalion, 105th Artillery, New York Army National Guard.

On May 30, 1970, plaintiffs were participating with their unit in a Memorial Day parade along the Grand Concourse in the Bronx, New York. During the parade, while riding in the back of their trucks, plaintiffs displayed printed signs bearing the legend "National Guardsmen Against the War," which signs also contained the well known "peace symbol." At about 10:30 a. m., plaintiffs' signs were confiscated by Captain John F. Boyle, who had apparently noticed their signs when he observed several civilian bystanders become excited and start towards plaintiffs' trucks. When the parade concluded at about 11:30 a. m., plaintiffs returned to the Armory and were reprimanded by Captain Boyle for their actions. Then, apparently without advising them of the possibility of any punishment, see § 130.31, New York Military Law, McKinney's Consol.Laws, c. 36, the captain proceeded to ask plaintiffs whether they were aware that an order had been given earlier that morning not to carry any signs in the parade

or to make any "gestures," to which both plaintiffs replied in the negative. The facts beyond these are in substantial dispute.

While it is clear that plaintiffs were thereafter directed to report to Captain John J. Hourigan, Jr., the commanding officer of their Battery, the parties disagree as to whether, prior to questioning, Captain Hourigan ever informed plaintiffs of their rights to silence, counsel, and against self-incrimination, and as to whether at this point plaintiffs actually acknowledged having heard their commanding officer's order not to display signs during the parade. Thereafter, charges and specifications, of which plaintiffs apparently never received written copies,[1] were drawn up by Captain Hourigan accusing plaintiffs of having violated §§ 130.88 and 130.115 of the Uniform Code of Military Justice.[2]

At about 1:00 p. m. of the same day, plaintiffs were arraigned before summary court-martial officer Major John A. Buonaiuto, Jr. Here, too, the parties differ in several significant respects in their recollection of the events which transpired at the court-martial proceeding itself. The general areas of their disagreement, the details of which are not critical to the disposition of the instant motions, concern: whether plaintiffs were ever advised of their right to civilian counsel at their own expense and of their right to an adjournment in order to obtain such; whether the charges and specifications against plaintiffs were ever read or presented to the accused, and, if so, whether these and all other statements made by the summary court-martial officer were read at a normal conversational speed so as to be easily understandable; whether plaintiffs were advised of the maximum punishments allowable under the State Code in a summary court-martial; whether, in fact, any witnesses (namely, Captains Hourigan and Boyle) were ever called to testify against plaintiffs and, if so, whether plaintiffs were given an opportunity to confront and cross-examine such witnesses; and finally, and perhaps most importantly, whether plaintiffs were advised of their right to plead guilty or not guilty and whether plaintiffs in fact did, as defendants maintain and plaintiffs vehemently deny, plead guilty to all of the charges and specifications against them.

In any event, it is undisputed that at the conclusion of the proceeding Major Buonaiuto sentenced both of the accused to confinement in the Civil Jail of the City of New York for 25 days and a fine of $25. Following the court-martial, the findings and sentence of that court were automatically reviewed by both the convening authority (the Battalion Commander), defendant Lieutenant-Colonel Alfred Rothwell, and by the supervisory authority, defendant Major General Mar-

---

1. While it would appear that in *this* case plaintiffs did not, at least prior to their summary court-martial conviction, receive copies of the charges against them, plaintiffs are apparently incorrect in stating that in the case of summary courts-martial the New York Code of Military Justice "does not even provide for service of charges so that an individual may have an opportunity to prepare his defense." (Plaintiffs' Memorandum of Law dated June 29, 1970, at p. 10). Section 130.30, New York Military Law, provides that an accused "shall be informed of the charges against him as soon as practicable," and Section 130.35 thereof requires that such charges be served upon him. The only disadvantage accruing to those tried before summary courts is that there is no time requirement for the effectuation of such service in advance of trial as there is "[i]n time of peace" for general and special courts. See People ex rel. Pantano v. Sheriff of City of New York (Sup. Ct., New York County, 1963) 38 Misc.2d 879, 238 N.Y.S.2d 886, 888.

2. There are no such numbered sections in the *Uniform* Code of Military Justice; however, such sections may be found in the *New York* Code of Military Justice and they deal, respectively, with the failure to obey a lawful order or regulation and with "disorders and neglects to the prejudice of good order and discipline in the organized militia and all conduct of a nature to bring discredit upon the organized militia." New York Military Law § 130.88, § 130.115 (Supp.1970).

tin Forey, Commanding General, 42nd Infantry Division, New York Army National Guard, and the sentences ordered into execution. This appellate review was carried out, as is the custom under the New York Military Law, on the basis of the court record below and without the knowledge or participation of the accused.[3] Similarly, it is not disputed that prior to bringing on this action plaintiffs were offered one further military review of their conviction, this time by the Staff Judge Advocate, defendant Lieutenant-Colonel Joel H. Brettschneider, pursuant to the discretionary review provisions of Regulation 8, Division of Military and Naval Affairs of the State of New York, para. 74(c). Plaintiffs chose to decline this additional offer of review as being in their opinion meaningless, unrequired (by the New York Code of Military Justice), and unsatisfactory to the achievement of full relief.

Thereafter, a warrant was executed for plaintiffs' arrest, at which point plaintiffs instituted the instant action and obtained, by order to show cause, the temporary restraining order against their arrest.

 Plaintiffs attack the constitutionality of their summary court-martial conviction on numerous grounds. First, they argue that the summary court-martial proceeding itself, whereby a single military officer acts as judge, jury, prosecutor and defense counsel, and which allegedly denies an accused other basic requirements of due process of law, violates the Fifth, Sixth and Fourteenth Amendments.[4] Second, plaintiffs urge

---

3. See §§ 130.60, 130.64, 130.65(b) (2) and Regulation 8, Division of Military and Naval Affairs of the State of New York, para. 68; Affidavit of defendant Lt. Col. Joel H. Brettschneider sworn to June 25, 1970, at p. 5, para. g(3) (m). But note that had plaintiffs had the assistance of defense counsel at trial they might have been able to participate in the appellate process at least to the extent provided by § 130.38(c), which states:

 "In *every* court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he may deem appropriate." (Emphasis added).

4. Military tribunals are not strictly governed by the procedure for trials prescribed in the Fifth and Sixth Amendments. For example, it is settled that the right to indictment by grand jury secured by the Fifth Amendment and the right to trial by jury guaranteed by the Sixth Amendment are not applicable to military trials. Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3 (1942). However, as Mr. Justice Douglas pointed out in his dissenting opinion in Burns v. Wilson, 346 U.S. 137, 152, 73 S.Ct. 1045, 1054, 97 L.Ed. 1508 (1953), "[N]ever have we [the Supreme Court] held that all the rights covered by the Fifth and the Sixth Amendments were abrogated by Art. I, § 8, cl. 14 of the Constitution, empowering Congress to make rules for the armed forces." Plaintiffs' chief contention here is that the Sixth Amendment requires the appointment of counsel to represent military personnel before summary courts-martial. (An accused *does* have the right to the assistance of counsel in special and general courts-martial, see §§ 130.27, 130.38(b), New York Military Law.) The Sixth Amendment provides, in part, that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence," and in Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963), the Supreme Court, in overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), concluded that the Sixth Amendment's guarantee of counsel was a right so "fundamental and essential to a fair trial" as to be made obligatory upon the states by virtue of the due process clause of the Fourteenth Amendment. Nevertheless, as far as we have been able to determine, no civilian court on the appellate level has as yet decided the precise question of whether the Sixth Amendment right to counsel is or is not applicable to military court-martial proceedings in general, and to summary courts-martial in particular. It is true that the only New York court to rule on the question, People ex rel. Pantano v. Sheriff of City of New York (Sup.Ct., New York County, 1963), 38 Misc.2d 879, 238 N.Y.S.2d 886, 888, has held that while the " 'want of counsel in a particular case may result in a conviction lacking in * * * fundamental

that, even assuming in general the constitutionality of the summary court-martial proceeding, the military can exercise no court-martial jurisdiction whatsoever over National Guardsmen (like plaintiffs) *not* on active duty.[5] Third,

fairness,' " the Sixth Amendment right to counsel is not generally applicable to summary court-martial proceedings. It should be pointed out, however, that the *Pantano* court rested its decision upon the Supreme Court's reasoning in Betts v. Brady, which, as is noted above, was subsequently repudiated in Gideon v. Wainwright.

In addition, there is today growing authority for the view that the right to counsel is applicable to military tribunals. See, e. g., Application of Stapley, 246 F.Supp. 316 (D.Utah 1965) ; Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650 (1947) ; *cf.* In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1970) ; Gibbs v. Blackwell, 354 F.2d 469 (5th Cir. 1965). But see LeBallister v. Warden, U. S. Disciplinary Barracks, Leavenworth, Kan., 247 F.Supp. 349 (D.Kan.1965), and compare People v. Letterio, 16 N.Y.2d 307, 266 N.Y.S.2d 368, 213 N.E.2d 670 (1965) ; McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965).

Finally, it should be noted that, notwithstanding the applicability of the Sixth Amendment, the New York State Constitution may well require the appointment of counsel in trials before military tribunals. Article I, § 6 thereof, provides: "[I]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions." This state constitutional guarantee of the right to counsel has long been deemed applicable to court-martial proceedings. People v. Van Allen, 55 N.Y. 31 (1873) ; Application of Palacio, 238 Cal.App.2d 545, 48 Cal.Rptr. 50, 53 (1965).

There is apparently no dispute as to the general applicability to court-martial proceedings of other basic requirements of due process. See Burns v. Wilson, 346 U.S. 137, 142–143, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), reh. denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363. For example, it seems clear that servicemen tried by court-martial have the right of confrontation with the witnesses against them and may subpoena witnesses and other evidence in their behalf. See, e. g., McCurdy v. Zuckert, 359 F.2d 491, 492 (5th Cir. 1966) ; § 130.46, New York Military Law. But *cf.* O'Callahan v. Parker, 395 U.S. 258, 264, note 4, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

in the National Guard not in federal service courts-martial shall "have the jurisdiction and powers * * *, and shall follow the forms and procedures, provided for" similar courts of the Army and the Air Force. The jurisdiction of such courts over members of the armed forces is set forth in the Uniform Code of Military Justice, 10 U.S.C. § 801 et seq., which provides, in Article 2 thereof, 10 U.S.C. § 802(3), that reservists are only subject to the Code "while they are on inactive duty training authorized by written orders which are voluntarily accepted by them and which specify that they are subject to this chapter." At least one court has interpreted this section to "apply to inactive reservists who merely attended short periodic drills or training, participated in week-end flights or who handled dangerous or expensive equipment," Petition of La Plata on Behalf of Fisher, 174 F.Supp. 884, 886 (E.D.Mich.1959), which description may well embrace plaintiffs' status as inactive duty guardsmen.

In addition, there are constitutional questions as to whether plaintiffs, as national guardsmen *not* on active state duty, are amenable to court-martial jurisdiction under the New York Code of Military Justice. As the Supreme Court recently noted in O'Callahan v. Parker, supra, 395 U.S. at 272, n. 18, 89 S.Ct. 1683, the generally accepted rule is that indictment by grand jury (and, by implication, trial by jury) "is *never* necessary 'in cases arising in the land or naval forces' but is necessary for members of the militia, except when they have been 'called into the actual Service of the United States' (Art. II, § 2, U.S.Const.) 'to execute the Laws of the Union, suppress Insurrections and repel Invasions.' Art. I, § 8, U.S.Const.," or, in the words of the Fifth Amendment, except when they are in "actual service in time of war or public danger." Clearly, "[t]he National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16, of the Constitution." Maryland for Use of Levin v. United States, 381 U.S. 41, 46, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), and which is excepted under certain specific circumstances just mentioned from the protection of the Fifth Amendment, and thus it is not at all certain whether *inactive* duty members of that National Guard, who would not appear readily to fall within this exception for militiamen "in actual service in time of War or public danger," may

5. In this connection it should be noted that federal law, 32 U.S.C. § 326, provides that

plaintiffs challenge, on equal protection and federal supremacy grounds, the constitutionality of § 130.20(b) of the New York Code of Military Justice, which affords to persons on active state duty, but not to those on inactive duty, the right to object to trial by summary court-martial and to be tried instead (unless they have previously been offered and have refused non-judicial punishment under the provisions of § 130.15) by special or general court-martial, thereby becoming eligible for the appointment of defense counsel pursuant to § 130.27(a) of the Code. Plaintiffs also suggest that their summary court-martial was jurisdictionally defective in that the charges and specifications to which they allegedly pleaded guilty and for which they were convicted, namely, violations of §§ 130.88 and 130.115 of the *Uniform* Code of Military Justice, do not exist as such in that Code.[6] Finally, plaintiffs contend that the summary court-martial officer exceeded the bounds of his authority by sentencing plaintiffs to both 25 days in jail *and* $25 fine, thereby violating paramount federal law which apparently permits such punishments only in the alternative.

Despite the obvious weightiness of at least some of these constitutional claims, see *infra*, the court is required to decline jurisdiction in the instant case. It is settled law that the Civil Rights statute cannot be used by a state prisoner to circumvent established rules of comity and the requirement of the federal statute that habeas corpus shall not be granted unless it appears that the applicant has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254; Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969); Greene v. State of New York, 281 F. Supp. 579 (S.D.N.Y.1967); Lombardi v. Peace, 259 F.Supp. 222 (S.D.N.Y.1966). Yet, if this court were to assume jurisdiction here, such circumvention, with its consequent abrasive effect on state-federal relations, would be the inevitable result. Negron v. Wallace, 436 F.2d 1139 (2d Cir., decided Jan. 4, 1971, Friendly, J.). Thus, it has been regularly held, as it must be here, that the redress of alleged civil rights violations incurred in state criminal proceedings or the release from allegedly unlawful custody of persons imprisoned by state courts may not be secured under the Civil Rights Act, but only by resort to habeas corpus. See, e. g., Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y.1968); Peinado v. Adult Authority of Department of Corrections, 405 F.2d 1185 (9th Cir. 1969); Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963).

In the instant action plaintiffs not only charge unconstitutional detention resulting from illegalities in their court-martial trial and conviction, but also challenge the very jurisdiction of the court—the two classic concerns of a writ of habeas corpus. See Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), reh. denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (separate opinion by Frankfurter, J.); United States ex rel. Innes v. Hiatt, 141 F.2d 664, 665–666 (3rd Cir. 1944) (Maris, J.). Although plaintiffs have been temporarily spared incarceration pending the adjudication of this motion, it is clearly the legality of such confinement which they seek to contest and the imposition of such confinement which they seek to avoid. That plaintiffs are indeed challenging the lawfulness of their detention is made obvious by the prayer for relief in their complaint "that defendants be permanently enjoined from enforcing said warrant of arrest and from otherwise constraining or confining plaintiffs to a prison term for acts hereinbefore set forth." In the posture of this case such relief may be obtained only through the vehicle of habeas corpus.

Nor can plaintiffs find support for this § 1983 action in the Supreme

---

be deprived of the constitutional benefits of indictment by grand jury and trial by jury.

6. See footnote 2 supra. Compare Duncombe v. State of New York, 267 F.Supp. 103, 105, n. 4, 108 (S.D.N.Y.1967).

Court's ruling in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). *Dombrowski* authorized only a limited expansion of federal injunctive relief against some types of abusive *imminent* state criminal prosecutions threatening constitutionally protected expression. It did so by carving out an exception to the abstention doctrine authorizing federal court intervention in threatened state criminal proceedings where a state penal statute regulating speech is justifiably attacked, on its face, as being unconstitutionally vague, or, as applied, as discouraging protected civil rights activities. *Id.*, at 489–490, 85 S.Ct. 1116.[7] In the case at bar, however, the court is not confronted with an *imminent* prosecution designed to discourage the exercise of civil rights, but rather with a *fait accompli*. Plaintiffs have been tried, convicted, and sentenced. Indeed, most, if not all, avenues of military appellate review have already been exhausted. No further prosecutions are threatened, or even contemplated. Nor do plaintiffs seek to enjoin a *pending* criminal proceeding. On the contrary, the single prosecution of which plaintiffs complain and which itself arose out of a single isolated incident in last year's Memorial Day parade has been definitively concluded.[8] In addition, this is clearly not the case of a bad faith prosecution designed to inhibit fundamental First Amendment rights or of a state statute being facially

invalid as abridging free expression. Rather, plaintiffs are charged with violating two military statutes, the legitimate military objectives of which are to discourage disobedience to lawful orders and to prevent actions which might disrupt order and discipline or bring discredit upon the militia. The mere fact that in this particular case plaintiffs' alleged actions may have constituted not only disobedient and disruptive behavior under military standards, but also, coincidentally, "symbolic speech" under civilian constitutional standards, cannot convert these statutes serving justifiable military ends into overly broad regulations violative of the First Amendment, nor can it be allowed to pervert the objectives of prosecution apparently brought in good faith. Indeed, even if these statutes were to circumscribe directly the exercise of free speech in certain military contexts, it is not likely that plaintiffs would be in any better position under *Dombrowski* to maintain the instant action. For, as the Court of Appeals for this Circuit recently made clear in Raderman v. Kaine, 411 F.2d 1102, 1104 (2d Cir. 1969):

"If [plaintiff] asks: Does being in the Army curtail or suspend certain Constitutional rights?, the answer is unqualifiedly 'yes'. Of necessity, he is forced to surrender many important rights. He arises unwillingly at an unreasonable hour at the sound of a

---

7. But see the limiting construction placed on *Dombrowski* in the Supreme Court's most recent pronouncement on this subject in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (decided February 23, 1971).

8. Indeed, were it not for the fact that the state military proceeding has been altogether completed, this court would be confronted with even more imposing obstacles to its assumption of jurisdiction; namely, 28 U.S.C. § 2283, the anti-injunction statute, which provides that, except under certain limited circumstances, "A court of the United States may not grant an injunction to stay proceedings in a State court * * *"; and the doctrine of Stefanelli v. Minard, 342 U.S. 117, 120–123, 72 S.Ct. 118, 96 L.Ed. 138 (1951),

which forbids federal interference with both threatened and pending state criminal prosecutions except on the most urgent showing of need. See Respress v. Ferrara, 321 F.Supp. 675 (S.D.N.Y., 1971) (three-judge court), and cases cited therein. Further, in a series of decisions announced within recent days, most notably Younger v. Harris, supra, 401 U.S. at 750, 91 S.Ct. 746, and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (decided February 23, 1971), the Supreme Court has reemphasized its adherence to the settled doctrine of equity that a federal court should not, except where necessary to prevent "both great and immediate" irreparable injury, intervene by way of either injunction or declaratory judgment in a pending state criminal prosecution.

bugle unreasonably loud. From that moment on, his freedom of choice and will ceases to exist. He acts at the command of some person—not a representative of his own choice—who gives commands to him which he does not like to obey. He is assigned to a squad and forced to associate with companions not of his selection and frequently the chores which he may be ordered to perform are of a most menial nature. Yet the armed services, their officers and their manner of discipline do serve an essential function in safeguarding the country. The need for discipline, with the attendant impairment of certain rights, is an important factor in fully discharging that duty."

Thus, plaintiffs' reliance on *Dombrowski* as a justification for federal injunctive relief under the Civil Rights Act is clearly misplaced.

 Likewise, even viewing plaintiffs' civil rights complaint as an application for habeas corpus, the court must decline jurisdiction, for plaintiffs have patently failed to exhaust their state remedies. Plaintiffs clearly have an available state remedy by way of writ of habeas corpus in the state courts.[9] For, although § 130.72 of the New York Military Law provides that the proceedings,

findings, and sentences of military courts-martial convened pursuant to the State Code of Military Justice are final, conclusive and binding upon the courts of the state, the New York courts have nevertheless held that "the legality of the restraint under the authority of a court-martial may be reviewed by a civil court to the extent of determining the existence of jurisdiction, or whether a punishment 'forbidden by the law' has been inflicted." People ex rel. Pantano v. Sheriff of City of New York (Sup.Ct., New York County, 1963), 38 Misc.2d 879, 238 N.Y.S.2d 886, 887–888.[10] In addition, if the circumstances [11] of the court-martial and the manner in which it was conducted were lacking in the basic standard of fairness required by the due process clause (thereby depriving the military court of its "jurisdiction" to proceed), the New York civil courts will also intervene upon a petition for habeas corpus. *Id.*, at 888, 238 N.Y.S.2d 886; United States ex rel. Innes v. Hiatt, supra, 141 F.2d at 666. See also Burns v. Wilson, supra, 346 U.S. at 142–143, 148–149, 152–154, 846–848, 73 S.Ct. 1045, 74 S.Ct. 3; Shapiro v. United States, 69 F.Supp. 205, 207 (Ct.Claims 1947).[12] Thus, whether plaintiffs' claims be concerned with traditional questions going to the formal jurisdiction of the military court or with broader questions going to the constitu-

9. Plaintiffs may also have an additional administrative military remedy by way of a "complaint of wrongs." Section 131.4, New York Military Law (Supp. 1970), provides: "Any member of the organized militia who believes himself wronged by his commanding officer, and, upon due application to such commander, is refused redress, may complain to any superior officer who shall forward the complaint to the chief of staff, who shall examine into said complaint and, if justified shall take proper measures for redressing the wrong complained of. If the chief of staff finds the complaint not to be justified and refuses redress, the member who initiated the complaint may appeal to the governor for redress, in accordance with regulations issued pursuant to this chapter."

10. See, e. g., United States ex rel. Innes v. Hiatt, supra, 141 F.2d at 665, where the court held that "a civil court in habeas corpus proceedings could inquire whether the court-martial was properly constituted, whether it had jurisdiction of the person and subject matter, and whether it had power to impose the sentence which it did impose."

11. The complaint also charges, at page 6 thereof, that "at the time of plaintiffs' court-martial, within three hours of the time the alleged acts took place, a party was taking place which the officers that were involved in plaintiffs' court-martial were attending, which party was taking place on the floor above the court-martial."

12. This does not mean, of course, that a civil court may sit in review of the weight of the evidence before the military tribunal. Whelchel v. McDonald, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141 (1950).

tional propriety of the summary court's judgment of conviction, they may properly be the subject of inquiry in a habeas corpus application in New York state court.

It follows, then, that the scope of habeas corpus open to the state courts on review of judgments of conviction pronounced by military courts-martial is fully broad enough to encompass the particular constitutional claims asserted by plaintiffs herein. Three prongs of plaintiffs' attack on their conviction—namely, their status as *inactive* duty guardsmen, the allegedly defective recitation of the charges (§§ 130.88 and 130.115 of the Uniform Code of Military Justice) for which they were convicted, and the allegedly unlawful imposition of dual punishments (fine *and* imprisonment)—present classical examples of technical questions going to the jurisdiction of the sentencing court. Similarly, plaintiffs' remaining challenges to their convictions alleging particular constitutional deprivations within the summary proceeding itself—specifically, their charges of denial of due process and of other more specific constitutional guarantees (right to counsel, confrontation of witnesses, etc.) as well as their attack on the constitutionality of § 130.20(b) of the New York Code (which provides *active* duty, but not inactive duty, guardsmen the right to object to trial by summary court-martial)—raise questions for the state court falling well within the confines of the judicially broadened concept of "jurisdiction." *Cf.* Johnson v. Zerbst,

304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and the separate opinion of Justice Frankfurter in Burns v. Wilson, supra, 346 U.S. at 846–848, 74 S.Ct. 3, 98 L.Ed. 363. Hence, it is clear that plaintiffs may obtain complete review of their military court convictions by way of habeas corpus in the state civil court system. Nor may defendants contend that plaintiffs are foreclosed from such review by reason of their having allegedly pleaded guilty. In the first place, plaintiffs may ultimately succeed in withdrawing (if, in fact, it is proven that they ever entered) their guilty pleas,[13] and thus be in a position to maintain not only their numerous constitutional defenses, but also the lawfulness of their conduct even under the broad terms of §§ 130.88 and 130.115. In addition, even assuming *arguendo* that pleas of guilty have been validly entered, they cannot serve to waive or ratify either basic jurisdictional defects or the deprivation of certain fundamental constitutional rights, such as the right to effective assistance of counsel. Duncombe v. State of New York, 267 F.Supp. 103, 108 (S.D. N.Y.1967); Application of Stapley, 246 F.Supp. 316, 321 (D.Utah 1965). See also Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Brady v. United States, 397 U.S. 742, 748, n. 6, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Harvey v. State of Mississippi, 340 F.2d 263 (5th Cir. 1965).[14]

▪ Aside from the fact that state remedies are entirely adequate to vindi-

13. Section 130.45, New York Military Law, provides: "If an accused arraigned before a court-martial makes any irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record and the court shall proceed as though he had pleaded not guilty." *Cf.* § 130.45, New York Military Law (Supp.1970).

14. Of course, certain grave consequences do attach to a guilty plea, as it is a surrender of substantial constitutional rights, including the privilege against self-incrimination, the right of confrontation and the right to a trial by jury. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Matter of D., 27 N.Y.2d 90, 313 N.Y.S.2d 704, 710, 261 N.E.2d 627 (1970), appeal docketed, as No. 953, 39 U.S.Law Week. 3215 (U.S. Nov. 9, 1970).

cate plaintiffs' rights and have as yet not been exhausted, plaintiffs have also failed to show "any threatened irreparable injury to federal rights to warrant invoking the equitable powers of the federal court." Duncombe v. State of New York, supra, 267 F.Supp. at 107. The only irreparable harm of any consequence of which plaintiffs complain—namely, that they will be forced to serve their entire sentence of confinement before any meaningful relief may be had in state court—would not appear to be a very real possibility. Section 7009(e), New York CPLR, expressly provides that:

"Pending final disposition [of a writ of habeas corpus], the court may place the person detained in custody or parole him or admit him to bail as justice requires."

Indeed, as defendants themselves have conceded, "[h]ad plaintiffs arranged to surrender to the Sheriff of the City of New York and simultaneously sue out a writ of habeas corpus in Supreme Court, New York County, in all likelihood, they would have been *immediately paroled* pending hearing and determination of the proceeding." (Defendants' Memorandum of Law, p. 4) (emphasis added). At argument on the motion, counsel for the defendants clarified this reference by representing to the court that the state would look favorably upon such an arrangement. This representation is regarded seriously, and were it not for the suggestion of plaintiffs' immediate release on parole pending adjudication of their habeas corpus application, this court would have great reluctance to relinquish jurisdiction of the matter.

That justice would require plaintiffs' immediate release on parole would seem to be demonstrated by the obvious substantiality of many of the issues which would undoubtedly be raised in any habeas petition ultimately filed by plaintiffs in the state court. For example, even assuming that the military can exercise court-martial jurisdiction over inactive duty National Guardsmen (an assumption by no means free of doubt), very serious questions remain as to the power of the summary court to impose the punishments it did in the instant case. On its face, § 130.20(c) of the New York Code of Military Justice, under which plaintiffs herein were sentenced and which provides for the imposition by state summary courts-martial of dual punishments of fine *and* imprisonment, would appear to contravene specific provisions of federal law, 32 U.S.C. §§ 329, 330, which apparently authorize only alternative punishments (that is, fine *or* imprisonment) in the case of summary courts-martial of National Guardsmen not in federal service. In this regard, it should be noted that Article 1, § 8, cl. 15, of the Constitution gives Congress the express power to provide for the "disciplining" of the militia. Indeed, it was recognized in the Note of Commission, Art. 7, Code of Military Justice, New York Military Law, p. 74, that "Congress has paramount power to provide for organizing, arming and disciplining the militia of the several states" and that "the word 'disciplining' includes the power to punish members of the forces comprising the militia of the several states through the medium of military courts." The Commission's Note further observes that Congress, by enactment of the National Defense Act of 1916 (the source of the present federal provisions, 32 U.S.C. §§ 329, 330) did "prescribe specifically * * * the maximum punishments which state courts-martial may impose." *Id.* Indeed, as the Commission itself conceded with respect to similar federal limitations placed upon state courts-martial in the punishment of heinous civil crimes, such limits "raise serious constitutional questions as to the power of the State to prescribe punishments in excess of those specified in the National Defense Act of 1916 * * * *" *Id.* at 80. But see "A Brief in behalf of a State Code of Military Justice," 3 (1952) N.Y.Leg.Doc.No.28, and 9 (1953) N.Y.Leg.Doc.No.79, at 17, prepared by the Joint Legislative Committee to Study the Military Law, Hon. Joseph ·C. Zavatt, Counsel.

Similar doubts exist as to the constitutionality of § 130.20(b) of the New York

Code of Military Justice, which provides that persons on "active state duty" (see § 130.1(5), New York Military Law), as opposed to those in a "duty status other than active state duty" (see § 130.1(6), New York Military Law), may refuse trial by summary court-martial (unless they have been offered and have refused non-judicial punishment under § 130.15, New York Military Law) and elect instead trial by special or general court-martial, whichever may be appropriate. Not only does this distinction between active and inactive duty guardsmen, on its face, raise the spectre of invidious discrimination under the equal protection clause, but it would also appear to conflict, as in the case of § 130.20(c) just discussed, with paramount provisions of federal law. In 32 U.S.C. § 326, Congress has provided that in the National Guard not in federal service courts-martial shall "have the jurisdiction and powers, * * * and shall follow the forms and procedures, provided for" similar courts of the Army and the Air Force. Such forms and procedures are now set forth in the Uniform Code of Military Justice, 10 U.S.C. § 801 et seq., which provides, in Article 20 thereof, 10 U.S.C. § 820 (Supp.1970):

> "*No person* with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto. If objection to trial by summary court-martial is made by an accused, trial may be ordered by special or general court-martial as may be appropriate." (Emphasis added.) [15]

It would appear that *all* soldiers, whether they be in an active or reserve status, were intended to be eligible for the benefits of this provision and to have the absolute right to refuse trial by summary court-martial.[16] Thus, as a California state court said recently in discussing the validity of a provision of California military law (not unlike § 130.20(b) of the New York Military Law here in dispute) in light of the broad command of § 820 of the Uniform Code, to construe the state statute so as to exclude any "members of the state militia from the enjoyment of a valuable right and important procedure conferred and provided for by another statute (the Uniform Code)" would "create grave doubts concerning

---

15. This provision prohibiting trial by summary court-martial in *all* cases in which the person objects thereto replaced an earlier section (very much like § 130.20 (b) of the New York Code) which allowed such trial over the person's objection if he had previously been offered and had refused article 15 punishment. It read as follows: "No person with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto, unless under section 815 of this title (article 15) he has been permitted and has elected to refuse punishment under that article." 10 U.S.C. § 820 (1959 ed.). Even this earlier provision, however, contained no distinction, such as is found in § 130.20(b), between active and inactive duty servicemen. Indeed, Congress would appear to have amended this former section for the express purpose of "assuring that *no serviceman* may be forced to stand trial against his will in a court where the same man is judge and jury, prosecutor, and defense counsel." 3 U.S.Code Cong. & Admin.News, p. 4506, 1968 (emphasis added).

16. Of course, if *all* New York National Guardsmen, whether they be on active or inactive state duty, were found to have the right to refuse trial by summary court-martial and stand trial instead by special or general court-martial, it would be unnecessary to determine whether the right to counsel guarantees of either the federal or state Constitution are applicable to trials in military courts. For, as was previously noted, New York statutory law governing military trials expressly assures the assistance of defense counsel in special and general courts-martial, see §§ 130.27, 130.38(b), New York Military Law. Thus, as was stated in Application of Palacio, supra, 48 Cal.Rptr. at 53, "[e]ven if it be assumed that constitutional guarantees of the right to counsel apply in military trials, such guarantees are protected or satisfied when an accused before a summary court-martial is entitled to object to such summary proceeding and to be tried instead by a special or general court-martial in which the right to counsel is secured by military law."

**554**

the constitutionality of that [state] statute." Application of Palacio, 238 Cal. App.2d 545, 48 Cal.Rptr. 50, 54 (1965).[17]

In view of the substantiality of the issues raised by plaintiffs, the appropriateness of releasing them on parole pending the outcome of their state habeas petition would seem clear. As Judge Friendly recently noted, in speaking for a three-judge court in Respress v. Ferrara, 321 F.Supp. 675 (S.D.N.Y.1971),

"We refuse to believe that New York judges would be unresponsive under such circumstances. If they should be, the doors of the federal courthouse will still be open * * *."

Accordingly, the temporary restraining order is vacated and plaintiffs' complaint dismissed.

17. The preceding discussion of but two aspects of plaintiffs' multi-faceted attack on their summary court-martial convictions is intended for illustrative purposes only.

Failure to review the other issues raised is not to be construed as any evaluation of their merit.