Estis L. GIBBS, Appellant,

v.

Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.

No. 22286.

United States Court of Appeals Fifth Circuit.

Dec. 6, 1965.

Estis L. Gibbs, pro se.

F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and RIVES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

Estis L. Gibbs, formerly a private in the United States Army but now an inmate of the United States Penitentiary in Atlanta, filed a petition for habeas corpus challenging (1) the right of the United States to further confine him after 20 years in prison or on parole, and (2) the validity of his conviction by court-martial at Munich, Germany, in July 1945. Gibbs contends that he is now serving a 15-year sentence but has spent 20 years either in prison or on parole, and, therefore, that the United States has no right to further detain him. Gibbs further contends that he was denied effective assistance of counsel in the preparation and trial of his case, and, therefore, that his rights guaranteed by the Fifth and Sixth Amendments were violated.

The scant record before us [1] shows that on May 31, 1945 Gibbs is alleged to have gone to 13 East Canal Street, Nurnberg, Germany. While there, according to the findings of the court-martial, he shot and killed Tino Zotta, assaulted Mrs. Marie Bar and Christine Hempfling and forcibly raped Christine Hempfling. According to Gibbs' uncontroverted amendment to his petition for habeas corpus, the Commander who appointed the court-martial detailed a Captain Richard Knowe to act as his counsel. On July 4, 1945, Knowe was ordered to transport Gibbs, along with the witnesses against him, from Nurnberg to Munich, Germany. The trial started the same day at 1 P.M. and ended later that afternoon. Captain Knowe, now a resident of Utica, New York, was not a lawyer, had never had any legal training, and objected to being appointed defense counsel because he did not believe himself competent. Knowe had never been in a courtroom before the day of Gibbs' court-martial.[2] Gibbs was found guilty of murder, rape and assault in violation of the Articles of War and was sentenced to life imprisonment at hard labor.

Gibbs' sentence was later reduced to 20 years and both the petitioner and the United States seem to agree that it has been further reduced to 15 years. Gibbs has been paroled three times. Although the record is not entirely clear, it appears that on each occasion his parole was revoked because he became intoxicated in violation of a parole provision forbidding the use of alcohol. At the time of his petition Gibbs had spent approximately 10 years and 6 months in prison and 7 years and 8 months in constructive custody while on parole.

Gibbs, by his initial petition for a writ of habeas corpus filed September 15, 1964, challenged only his detention on a 15-year sentence after serving over 18 years in actual or constructive custody. In two terse orders dated October 2 and 12, 1964, the district court held that "petitioner is not entitled to credit against his sentence for the time during which he was released on parole status * * *," citing 18 U.S.C. §§ 4164, 4207. We are sure that the district court also intended to cite 18 U.S.C. § 4205 [the former § 723(c)]. Section 4205 reads as follows:

"§ 4205. *Retaking parole violator under warrant; time to serve undiminished*

"A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and *the time the prisoner was*

---

1. The record before this Court does not include the actual court-martial proceedings. We merely have the record of Gibbs' conviction and some documents bearing on his several parole revocations. The district court did not hold a hearing and its orders followed submission of briefs by the United States.

2. Gibbs was not represented by counsel on his petition for habeas corpus and it appears that he knows little about legal procedure. In one of his letters Gibbs explained: "Your Honor, I'm at the mercy of you and your Court. I don't have any money to present my case or to hire a lawyer to present my case. I am in hopes that you will accept this letter as the truth to the best of my ability and help

me or advise me what I should do." Realizing his inability, Gibbs again wrote: "I don't have any legal knowledge of the law and I am at a loss to proceed any further without the help of counsel. If it pleases you, Your Honor, I would appreciate your appointing me an attorney to help me." No attorney was appointed. The record contains neither an affidavit from the former Captain Knowe, nor a denial by the United States of what Gibbs has asserted as to the inadequacy of his counsel. This Court is merely treated to the alleged spectacle of a man, who has been in the actual or constructive custody of the United States for over 20 years without ever having, at any stage of his proceedings, the benefit of legally trained counsel.

*on parole shall not diminish the time he was sentenced to serve."* (Emphasis added.)

Whether or not this provision represents sound policy may be open to question,[3] but its general constitutionality appears to be well settled. See Bates v. Rivers, 116 U.S.App.D.C. 306, 323 F.2d 311 (1963), construing the analogous District of Columbia provision. In Johnson v. Wilkinson, 279 F.2d 683 (5 Cir. 1960), this Circuit approved the application of § 4205 to a prisoner who had committed a serious crime while on parole.

■■ But a statute may be constitutional as applied in some situations and unconstitutional as applied in others. Sims v. Baggett, 247 F.Supp. 96 (M.D. Ala., Oct. 2, 1965) cases collected n. 7, and accompanying text. In the instant case, petitioner claims that he has lost over seven years' time on parole because he became drunk on three occasions. The allegedly harsh application of § 4205 in this case raises serious constitutional questions. Such difficult questions deserve more attention than the pithy opinion filed by the district court. Without a fully developed record, this Court is in no position to judge the circumstances surrounding Gibbs' parole revocations. Accordingly, this case is remanded for the development of a full record and reconsideration in the light of the views expressed in this opinion. United States v. Petrillo, 332 U.S. 1, at 6, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Polk Co. v. Glover, 305 U.S. 5, at 10, 59 S.Ct. 15, 83 L.Ed. 6 (1938); Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, at 213, 55 S.Ct. 187, 79 L.Ed. 281 (1934); Connor v. New York Times Co., 310 F.2d 133, at 135 (5 Cir. 1965).

In his second request to the trial court for reconsideration, filed December 17, 1964, Gibbs for the first time raised the question of inadequate counsel at his court-martial. In a two-paragraph opinion, the district court dismissed this contention, noting that the procedures adopted by Congress for court-martials had been followed.[4]

■ The scope of review adopted by the district court amounted to little more than a technical review of jurisdiction. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), if it accomplished nothing else, conclusively rejected the concept advocated by Justice Minton that habeas corpus review should be restricted to questions of formal jurisdiction. Cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and the opinion of Justice Frankfurter in Burns v. Wilson, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953).

■ In reviewing military convictions, the courts must be on guard that they do not fail to perceive the difference between reviewing questions of fact and law. This is especially true at the constitutional level. Cf. Townsend v. Sain, 372 U.S. 293, at 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962). In Burns, Chief Justice Vinson said (346 U.S. at 142–143, 73 S. Ct. at 1049):

"Had the military courts manifestly refused to consider those claims, the District Court was empowered to review them de novo. For the constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiers—as well as civilians—from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by

3. We think that questions of policy are quite properly within the domain of Congress and any changes should be made by that branch of the government and not by the courts.

4. Under the former Articles of War, defense counsel at a general court-martial needed only to be an officer of the United States. There was no requirement that he have any legal training. Article 11,

former section 1482 of title 10 (June 4, 1920, ch. 227, subch. II, § 1, 41 Stat. 789.) Congress in the new Uniform Code of Military Justice requires that defense counsel in a general court-martial must be a graduate of an accredited law school or be a member of the state or federal bar, admitted to practice before the state or federal courts. 10 U.S.C.A. § 827(b) (1), 64 Stat. 117 (May 5, 1950).

dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts."

Chief Justice Vinson went on to explain as follows (346 U.S. 144, 73 S.Ct. 1050):

"These records make it plain that the military courts have heard petitioners out on every significant allegation which they now urge. Accordingly, it is not the duty of the civil courts simply to repeat that process—to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims. Whelchel v. McDonald, supra [340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141 (1950)]. We think they have."

Of course, in Burns the Court did undertake a detailed review of the facts as found by the military courts. Accord, Rushing v. Wilkinson, 272 F.2d 633 (5 Cir. 1959).

█ Gibbs' petition goes to the very heart of a fair trial. The military code under which he was tried by its terms did not require Gibbs to be provided with competent counsel in this capital case. Therefore, the military court may not have reviewed the question raised by Gibbs' petition. Under these circumstances a trial de novo of the issue may well have been required. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Swisher v. United States, 237 F.Supp. 921 (W.D.Mo. 1965). Cf. In re Stapley, 246 F.Supp. 316 (D.Utah, Oct. 1, 1965).

We are not required to decide the exact scope of review on this appeal. What we can say is that very serious constitutional questions have been raised. In re Stapley, supra. There has been no claim by the United States that the exigencies of war required Gibbs to place his life on the sacrificial altar of justice with no shield but a counsel who had never been in a court room before the day of Gibbs' trial. The record before us is clearly inadequate. The district court erred in not giving Gibbs a full hearing and in not developing a record on which these important issues could be met and judged. Swisher v. United States, 326 F.2d 97 (8 Cir. 1964). Cf. United States v. Petrillo, 332 U.S. 1, at 6, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Polk Co. v. Glover, 305 U.S. 5, at 10, 59 S.Ct. 15, 83 L.Ed. 6 (1938); Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, at 213, 55 S.Ct. 187, 79 L.Ed. 281 (1934); Connor v. New York Times Co., 310 F.2d 133, at 135 (5 Cir. 1965). Accordingly, this case is remanded for the development of a full record and reconsideration in the light of the views expressed in this opinion.

Reversed and remanded.