Richard K. **HAGARTY**

v.

The **UNITED STATES.**

No. 81–68.

United States Court of Claims.

Oct. 15, 1971.

Fred W. Shields, Alexandria, Va., attorney of record, for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

DURFEE, Judge.*

This is a suit for military pay alleged to be due plaintiff for wrongful reduction in grade. Plaintiff served on active duty in the Navy for about 19 years and 7 months until January 31, 1964, when in the rate of commissary steward, second class, he was transferred to the Fleet Reserve, with retainer pay in that rate. The reason for his transfer was the requisite number of years of active duty.

From November 16, 1962, until June 14, 1963, plaintiff held the rate of commissary steward, first class, and his reduction in rate is the basis of his suit in this court.

Until June 3, 1963, according to entries in his Navy personnel file, plaintiff was noted as a hard worker, but criticized on occasions for lack of ability to supervise subordinates, performing the services himself. Until that date, he was never charged with misconduct in his Navy service.

On June 3, 1963 plaintiff, while serving aboard the USS Robert F. Keller, was charged with offenses by the ship's stores officer. Such charges were set forth on Navy personnel form 2696, entitled Report and Disposition of Offenses, addressed to the commanding officer of the ship, signed by the stores officer, setting forth as allegedly committed by plaintiff on or about May 31, 1963, the following offenses:

| Viol. Art. 132(g), UCMJ | Improperly account for receipts and disbursements of Commissary Materials to the extent of about $600.00— |
|---|---|
| Viol. Art. 134, UCMJ | Making or delivering receipts without having full knowledge that it is true. |

However, these specific charges against plaintiff were disposed of on June 14, 1963, at a captain's mast, a naval term for non-judicial punishment proceedings before a ship's commanding officer, pursuant to Article 15 of the Uniform Code of Military Justice (hereinafter referred to as UCMJ) without the intervention of a court-martial. Article 15 provides:

Uniform Code of Military Justice (10 U.S.C. & 815 (1964)).

§ 815. Art. 15. Commanding officer's nonjudicial punishment

(a) Under such regulations as the President may prescribe, and under such additional regulations as may be prescribed by the Secretary concerned, * * *

(b) Subject to subsection (a) of this section, any commanding officer may, in addition to or in lieu of admonition of reprimand, impose one or more of the following disciplinary punishments for minor offenses without the intervention of a court-martial—* * *

---

* The court acknowledges the helpfulness of the opinion of Trial Commissioner Roald A. Hogenson, although our approach to the issues involved differs in some respects.

(2) upon other personnel of his command—* * *

(D) reduction to the next inferior pay grade, if the grade from which demoted is within the promotion authority of the officer imposing the reduction or any officer subordinate to the one who imposes the reduction; * *

(d) The officer who imposes the punishment authorized in subsection (b), or his successor in command, may, at any time, suspend probationally any part or amount of the unexecuted punishment imposed and may suspend probationally a reduction in grade or a forfeiture imposed under subsection (b), whether or not executed. In addition, he may, at any time, remit or mitigate any part or amount of the unexecuted punishment imposed and may set aside in whole or in part the punishment, whether executed or unexecuted, and restore all rights, privileges, and property affected. He may also mitigate reduction in grade to forfeiture or detention of pay.* * *

Plaintiff was first apprised of the charges against him when he was called into the ship's office on June 3, 1963; the report of charges was shown to him, and the above-stated charges were read to him, and he signed the report under the following printed statement:

I have been informed of the nature of the accusation(s) against me. I understand I do not have to answer any questions or make any statement regarding the offense(s) of which I am accused or suspected. However, I understand any statement made or questions answered by me may be used as evidence against me in event of trial by court-martial (Article 31, UCMJ).

The report was left in the ship's office. Plaintiff returned to his duties. He heard nothing more about the matter until June 14, 1963, except that at some time prior thereto, the stores officer told him that he could call a witness.

On June 14, 1963, about fifteen minutes before the holding of the captain's mast, plaintiff was told by the Master-at-Arms of the ship to dress and report to the mast.

Plaintiff took two witnesses to the ship's commanding officer, Lt. Richard H. Smith, hereinafter called the captain. Plaintiff was not represented by counsel, was not advised that he could have counsel, and understood that counsel would not be allowed at the mast. One of his witnesses was before the captain on some other charge, his case was considered before that of plaintiff, punishment was imposed upon him, and the captain excused him as a witness for plaintiff, without hearing his testimony.

The captain then referred to the report of charges of offenses relating to plaintiff, and stated that plaintiff had signed such report.

The violation of Art. 134 as charged was read to plaintiff by the captain, who never asked plaintiff to plead or answer the charge; instead, he asked plaintiff where the $600.00 was. Plaintiff stated that he didn't know, but he thought it was in account of open purchase. The captain angrily replied, spiced with three profane words, that they were not talking about open purchase.

The captain then called plaintiff's remaining witness, a Chief Schuhr, who simply stated that plaintiff was doing his work. The captain then heard a statement by the ship's head policeman, the Master-at-Arms, but plaintiff was unable to hear what he had to say, except that it concerned meat scattered around on a truck. In response to the captain's inquiry to plaintiff whether such had occurred, plaintiff replied in the negative. The captain then asked plaintiff if he knew a Mrs. Eichorn, and he replied that he did not. The captain then read the Article 132(g) charge to plaintiff, with the remark that he was saving that to the last.

The captain then pounded his fists together, stated that plaintiff's case called for a bust, but that he would restore him to his rate in six months if he showed improvement.

No person testified before the captain, nor was plaintiff questioned concerning the specific charges against him. No records of account and no receipts were presented at the captain's mast, and none was shown to plaintiff.

At the trial before this court, full opportunity was offered to both parties to produce any witnesses or further evidence as to the captain's mast proceedings. No testimony or evidence was presented by defendant in rebuttal of the testimony of plaintiff at the trial here, which the Trial Commissioner has correctly characterized as "uncontradicted, reasonable and credible."

From the record before us as to the captain's mast, and the trial in this court, there is no substantial evidence (indeed there is no evidence) that plaintiff committed the specific offenses charged, as the Trial Commissioner correctly concluded.

However, after the conclusion of the proceeding, the following administrative remarks concerning plaintiff were recorded in plaintiff's Navy personnel file, over the signature of the ship's commanding officer:

| 14 JUN 63: | COMMANDING OFFICER'S NON-JUDICIAL PUNISHMENT |
|---|---|
| Date of Offense: | 3 JUN 63 |
| Nature of Offense | VIOL Art. 134, UCMJ; Improperly account for receipts and disbursements of Commissary Materials to the extent of about $600.00 |
| | VIOL Art. 132(g), UCMJ; Making or delivering receipts without having full knowledge that it is true. |
| Awarded: | Reduction to the next inferior rating. |

During plaintiff's 19 years and 7 months of active duty prior to transfer to the Fleet Reserve, for length of duty only, plaintiff was never placed on any report of offenses except to one involved in this case. His entire record of service, with this one exception, was excellent.

In summary, the record established that plaintiff was tried, found guilty and punished for offenses specified as violations of Articles 132 and 134 UCMJ by his commanding officer in a "captain's mast" proceeding under Art. 15 UCMJ.

Defendant has raised the question as to whether plaintiff's failure to appeal renders the Article 15 proceeding final, and whether the case should be dismissed for plaintiff's failure to exhaust administrative remedies.

■ As to appeal, Article 15 provides:

(e) A person punished under this article who considers his punishment unjust or disproportionate to the offense may, through the proper channel, appeal to the next superior authority. The appeal shall be promptly forwarded and decided, but the person punished may in the meantime be required to undergo the punishment adjudged. The superior authority may exercise the same powers with respect to the punishment imposed as may be exercised under subsection (d) by the officer who imposed the punishment. * *

Ordinarily, failure to exhaust administrative remedies bars recovery.

However, there are circumstances which establish reasons for an exception to this rule. Where administrative cures have been excusably overlooked, for example where an employee is not advised of his right to appeal, or where he is offered an alternative, this court has held that within its discretion, it may take jurisdiction notwithstanding a failure to exhaust administrative remedies. Piccone v. United States, 407 F.2d 866, 186 Ct.Cl. 752 (1969); Ainsworth v. United States, 180 Ct.Cl. 166 (1967); Morelli v. United States, 177 Ct.Cl. 848 (1966); Cunningham v. United States, 161 Ct.Cl. 82 (1963); Cuiffo v. United States, 137 F.Supp. 944, 131 Ct.Cl. 60 (1955).

■ Plaintiff here was a commissary steward, and not represented by counsel at the Article 15 proceedings. His failure to assert any of his rights under Article 15, and the procedural requirements thereof being violated under sec. 133 M.C.M., clearly indicates that he was not aware of these rights, including the right to appeal.

The final statement of the captain at the mast was that although plaintiff's case called for a bust, he would restore him to his rate in six months if he showed improvement. This was on June 14, 1963. On December 26, 1963, the captain told plaintiff that he was considering restoration of his rate. Plaintiff has asserted, without denial by defendant, that he continued to receive his regular pay as a commissary steward, first class, until his transfer to the Fleet Reserve on January 31, 1964 with reduction in grade.

Thus, plaintiff might well have been lulled into a belief that there was no necessity for an appeal from the captain's decision, or that taking an appeal to higher authority, might foreclose the expectation given to him by the captain for a restoration of grade. When he was finally transferred to the Fleet Reserve six months later with reduction in grade to commissary steward, *second class,* by order of higher command, an appeal from the captain's decision would have then been futile.

Accordingly, under the facts and circumstances in this case, we conclude that plaintiff is not barred from recovery in this court for failure to exhaust administrative remedies. The appeal provision of Article 15 is permitted solely on the belief of the appellant that his punishment was "unjust or disproportionate" to the offense. The superior appeal authority would have no power to declare that the entire captain's mast proceeding was void and invalid. However, we have hereinafter concluded that it was void and invalid. We conclude that exhaustion of administrative remedy, under the facts in this case, was not a prerequisite to suit in this court.

After oral argument here, we remanded the case to Commissioner Hogenson for further proceedings and a supplemental report on five specific topics of inquiry as to the captain's mast proceedings. As a result, briefs in reply to such inquires were submitted by counsel for plaintiff and counsel for defendant. We commend them for their exhaustive and painstaking research, which has been of great assistance in the field of our inquiry still largely unexplored.

■ In topic 1, we inquired: whether the offenses with which plaintiff was charged were "minor offenses" within the meaning of Article 15 of the Uniform Code of Military Justice.

We first note that nowhere in the record of this captain's mast proceeding is there any reference to Article 15 or to any "minor" offense charged or punishable thereunder. The first offense was specifically charged as "Viol. Art. 134 UCMJ" which provides:

Art. 134. General Article.

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, *shall be taken cognizance of by a general, special, or summary court-martial,* according to the nature and degree of the offense, and shall be punished at the discretion *of that court.* (Aug. 10, 1956, ch. 1041, 70A Stat. 76.) [Emphasis supplied].

The second offense charged was: "making or delivering receipts without full knowledge that it is true" and was specifically alleged as "Viol. Art. 132(g) UCMJ." This article (10 U.S.C. § 932) is entitled, "Frauds against the United States." It provides in relevant part that any person subject to this chapter:

(4) who, being authorized to make or deliver any paper certifying the receipt of any property of the United States furnished or intended for the armed forces thereof, makes or delivers to any person such writing *without having full knowledge of the truth of the statements therein contained* and with intent to defraud the United States; shall, upon conviction, be punished *as a court-martial may direct.* (Aug. 10, 1956, ch. 1041, 70A Stat. 75). [Emphasis supplied].

There is no subparagraph (g) of Article 132 UCMJ, 70A Stat. 36, 75. Article 132(4), insofar as it concerns the charge of "making or delivering receipts without having full knowledge that it is true," was intended to include the element of intent to defraud the United States. However, the explicit statement of the charge as a violation of Article 132 entitled, "Frauds against the United States," the captain's angry and profane language at the captain's mast toward plaintiff, pounding his fists together, and angrily asking of plaintiff "where the $600 was," makes it clear that plaintiff was actually being tried for "Frauds against the United States," the title of Article 132 together with the violation charged under Article 134, and not for a mere "lack of diligence," as contended by defendant, or a "minor offense" under Art. 15. Had plaintiff been convicted of the offenses actually alleged, he could have been sentenced to five years at hard labor, and a dishonorable discharge.

It is clear from the language of Articles 132 and 134 that the offenses defined were considered by Congress to be of a serious nature, cognizable by only a court-martial.

Article 15 does not define a minor offense, nor attempt to explain the distinction between a serious offense and a minor one. Lengthy hearings were held by both the Senate and the House Armed Services Committee which considered H. R. 2498 and H.R. 4080, which ultimately were enacted as the Uniform Code of Military Justice, the Act of May 5, 1950, 64 Stat. 107. There was extended discussion of Article 15 in the hearings before the Subcommittee of the Armed Services of the Senate and the House.[1] While all witnesses recognized the fact that Article 15 punishment was limited to minor offenses, there was very little said about the application of the Article.

Perhaps the clearest statement made to the House Committee was that of Mr. Smart, where at p. 923 he said:

I may state before I start, in that article 15 is a compromise article regarding the old 104 article of war, which we knew as company punishment. It is nonjudicial in nature. It is supposed to be administered for purely minor disciplinary offense within the unit.

There is no discussion of minor and serious offenses within the meaning of Article 15, in the House Report on H.R. 4080. See pages 6, 14 and 15 of House Rep. 491, 81st Cong., 1st Sess. Senate Report 486 on the same bill is not very helpful; see pages 5, 11 and 12 where the only reference to this matter is found, and the following statement appears:

\* \* \* For the difference between a minor offense and a serious crime see the Manual for Courts Martial, paragraph 118.

Par. 118, *Army Manual for Courts Martial*, 1949, provides in part:

Whether an offense may be considered "minor" depends upon its nature, the time and place of its commission and the person committing it. Generally speaking, the term includes misconduct not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court martial. An offense for which the Articles of War prescribe a mandatory punishment or authorize the death penalty or penitentiary confinement is not a minor offense. Offenses such as larceny, fraudulently making and uttering bad checks, and the like, involve moral turpitude and are not to be treated as minor. \* \* \*

---

1. *See* Hearings on H.R. 2498 Before the Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess., at 601, 643, 645, 649, 684, 709, 734, 736, 753, 775, 800–01, 812, 818, 923, 1263 (1949).

Hearings on H.R. 4080 Before the Subcomm. of the Senate Comm. on Armed Services 81st Cong., 1st Sess., at 35, 91, 105–06, 197, 284, 297, 325 (1949).

Para. 118, *supra*, is identical with Par. 128(b), *Manual for Courts-Martial, United States 1951.*

Both counsel, from their analyses of several opinions by Judges Advocate General, agree that they have found no helpful definition there of a "minor offense" under Article 15. There is extensive J.A.G. discussion of the application of this term under the particular circumstances in court-martial and court cases cited. In essence, they say that the determination of what constitutes a "minor offense" depends upon the facts and circumstances in each case. This interpretation necessarily requires that the record in each case must establish proof that *the offense charged* was a "minor offense." The record here is devoid of such proof, but on the contrary, establishes that *the offenses charged* were not merely "allegations of a lack of diligence on the part of the plaintiff," as contended by defendant. On the contrary, they were serious charges involving fraud against the Government.

In summary, as to topic 1, we conclude that the offenses charged were not "minor offenses" within the meaning of Article 15 UCMJ.

■ The second topic on which the court requested supplemental briefing by counsel is "[w]hether the requirement in Article 15 that the offenses be 'minor' is jurisdictional, so that non-judicial punishment imposed under that Article for an offense which is not 'minor' would be void and invalid" (ergo; beyond the jurisdiction of the commanding officer).

The word jurisdiction "is a term of large and comprehensive import, and embraces every kind of judicial action." Black's Law Dictionary, 4th Edition, p. 991. Courts have generally avoided the use of the word "jurisdiction" in ruling upon a commander's use or misuse of Article 15, perhaps because Article 15 does not involve a judicial proceeding. Nevertheless, courts have reviewed actions taken under Article 15, when the punishment imposed thereunder was for an offense which the court considered to be a serious one.

In United States v. Fretwell, 11 USC MA 377, 29 CMR 193 (1960), the issue was whether trial of the accused by general court-martial was barred by punishment imposed under Article 15. The Court of Military Appeals found that the accused's acts of misconduct were not merely "minor offenses" and recognized the action of higher authority in ordering a court-martial because the offenses involved were serious. However, the court did not rule directly on the question as to whether the Article 15 proceedings were void and invalid because the Court of Military Appeals recognized the punishment administered thereunder as authorized under Article 15(f):

(f) The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty. (Aug. 10, 1956, ch. 1041, 70A Stat. 41.)

Here Congress was carving out an exception applicable to an Article 15 proceeding only as to the recognition of prior punishments thereunder; a rule clearly not applicable to the question of invalidity stated in topic 2.

In Conn v. United States, 376 F.2d 878, 180 Ct.Cl. 120 (1967), this court set aside an Article 15 reduction in grade of a Sergeant to Lance Corporal as an invalid imposition of non-judicial punishment because of non-compliance with controlling regulations for conduct of an Article hearing. Obviously, Article 15 punishment for a "minor offense" that is not a minor offense is at least an equally serious non-compliance with Article 15, and is invalid and void. The

discretionary power given a commanding officer acting under Article 15 to determine the degree of punishment necessary to enforce discipline on shipboard does not include the power to charge, try and punish an accused for an offense that is not a "minor offense" under this Article.

Regardless of the non-judicial nature of Article 15 proceedings, we conclude as to topic 2 that the requirement that offenses be minor is jurisdictional, so that non-judicial punishment imposed under this Article for an offense which is not "minor" is void and invalid, under the particular facts now before the court.

 The third topic on which the court requested supplemental briefing relates to "[t]he proper procedures for a captain's mast, under Article 15 and the Manual for Courts-Martial (1951) (especially par. 133(b) thereof), with respect to offenses of the type with which plaintiff was charged."

Chapter XXVI of the Manual for Courts Martial, as amended, is entitled, "Non-Judicial Punishment." Section 133 thereof is entitled, "Procedure; Records of Punishment." Subsection (b) of this section is entitled, "Procedure for Navy, Marine Corps and Coast Guard, and provides:

> Unless in appropriate cases (132), the accused has demanded trial by court-martial in lieu of nonjudicial punishment, the commanding officer will ordinarily inquire at the mast, or office hours, into the facts as to any minor offenses allegedly committed by a member of his command. If, where permitted under 132, the accused has demanded trial by court-martial, the commanding officer may proceed in accordance with 33 without a mast or office hours hearing, except that he may not impose nonjudicial punishment while the demand is in effect. An accused who does not demand trial by court-martial in lieu of nonjudicial punishment may nevertheless be tried by court-martial if the circumstances of the case so warrant.

Subject to the foregoing, when the mast or office hours procedure is followed, the accused will be accorded a hearing which shall include the following *elemental* requirements: [Emphasis supplied].

For purposes of discussion, we will consider topic 3 together with topic 4 as closely interrelated. Topic 4 inquiries as to "[t]he particular respects, if any, in which the captain's mast at which non-judicial punishment was imposed on plaintiff departed from the proper procedures for a captain's mast (as set forth under item 3, *supra*)."

The first of the six "elemental requirements" for a hearing under 133(b) M.C.M., *supra*, is *"Presence of the accused before the officer conducting the mast."* This was complied with.

Requirement (2) of 133(b) is entitled *"Advice to the accused of the offenses of which he is suspected."* No reference by the captain was ever made to "suspected offenses." The charges for violations specified under Articles 132 and 134 UCMJ were contained in a report by the stores officer of the ship to the captain. They were read by this officer to plaintiff, who signed a statement that "I have been informed of the nature of the accusation(s) against me." At the captain's mast eleven days later, the captain referred to the report of charges of offenses, and stated that plaintiff had signed the report. He did not ask plaintiff to plead to either charge, and he made no explanation of their nature. As to the offenses charged, defendant alleges that "[t]hese facts allege dereliction of duty rather than fraud. As such, plaintiff should have been charged *under Article 92* UCMJ. * * * [P]laintiff was *well apprised* of his offenses, regardless of any misdesignation of punitive article of the UCMJ, by the plain and simple wording of the offense charged." [Emphasis supplied].

In his Reports of Enlisted Performance for the period involved herein, the captain commended plaintiff's work highly, except as to failure to get cooperation

from his men because of his weak professional knowledge, and lack of initiative, and lacking ability to perform duties of first class. The only reference in this report which pertains in any way to the charges at the captain's mast was that: "Hagarty has been found to be incompetent during the period of this report in that he could not account for $600.00 of Commissary Stores. Hagarty has failed to take any action to overcome his weaknesses."

On the basis of this report, the captain might have concluded that these failures or weaknesses to perform the duties of a commissary steward, first class, were "minor offenses" under Article 15, which could, in his discretion, justify a reduction in grade after *compliance with the M.C.M. regulations for a hearing*. However, according to his own signed report of "Commanding Officers Non-Judicial Punishment," *supra*, it clearly appears that he charged, tried and imposed punishment for offenses specified as "Viol. Art. 134 UCMJ" and "Viol. Art. 132," serious offenses requiring a court-martial. If, as defendant now concedes, this action was a "misdesignation" of the charges, and plaintiff should have been charged "for dereliction of duty rather than fraud," under Article 92 UCMJ, plaintiff was never appraised of this misdesignation when the charges were read to him, or at any time thereafter during the proceedings. Certainly there was nothing in the entire outrageous spectacle before the captain's mast, including the captain's angry, profane and abusive conduct toward the accused from which plaintiff could have been appraised that he was merely being tried for a dereliction of duty because of negligent bookkeeping.

If as defendant now contends, plaintiff should have been charged under Article 92 for the dereliction of duty (a minor offense) rather than fraud under Articles 132 and 134 (serious offenses), we must conclude that 133(b) (2) M.C.M. was not complied with. Plaintiff was not given advice as to offenses of which

he was suspected and if he was given any advice at all, it was wrong, as defendant now concedes.

In an article entitled "Getting the Most Out of the Captain's Mast," appearing in the January-February 1965 issue of the J.A.G. Journal, the author (Captain Benjamin R. Fern, U.S.N.), pointed out the correct procedures at a hearing, including this statement:

> * * * The C.M.A.A. [Chief Master-at-Arms] then presents the accused who is informed of the offenses for which he has been reported and of his rights under Article 31. It is here that the commanding officer's homework first begins to manifest itself, for he should be able to explain *in words which are readily understandable to* the accused how the alleged facts of the accused's act (or omission) comprised an offense under the U.C.M.J. Or, in other words, the accused is entitled to know with what he is charged. * * *

We regard this as an excellent and authoritative interpretation of what is required for "advice to the accused of the offenses of which he is suspected," by sec. 133(b) (2)—M.C.M.

Section 133(b) (3), M.C.M. requires, "Explanation to the accused of his rights under Article 31(b) of the Uniform Code of Military Justice." Article 31 UCMJ sets forth the prohibitions against self-incrimination by person subject to the UCMJ. Prior to his hearing, plaintiff signed the report of charges under the following statement:

> I have been informed of the nature of the accusation(s) against me. I understand I do not have to answer any questions or make any statement regarding the offense(s) of which I am accused or suspected. However, I understand any statement made or questions answered by me may be used as evidence against me in event of trial by court-martial. (Article 31, UCMJ).

We find that Requirement (3) of Sec. 133(b) M.C.M. was complied with.

Sec. 133(b) (4) requires:

"(4) *Presentation of the information against the accused, either by the testimony of witnesses in person or by the receipt of their written statements, copies of the latter being furnished to the accused.*"

The only evidence before us as to what witnesses or facts were produced at the captain's mast is the uncontradicted testimony of plaintiff at the trial in this court. The only witness who presented any information against the accused was the ship's Master-at-Arms. He made a statement before the captain which plaintiff was unable to hear, except that it concerned meat supposedly scattered around on a truck, which plaintiff denied.

Concerning the specific offense charged, plaintiff was never asked to plead or questioned thereon; and no witness testified or gave any information. If there were any written statements against the accused, he was never furnished with a copy, and they are not in the record. As to this complete failure to present information at the mast against the accused, as required, defendant takes the position that "it is apparent that the Commanding Officer was personally acquainted with the facts involved, and therefore may have dispensed with the formality of calling witnesses to testify as to facts with which he was already familiar." We need not belabor this argument, except to say that the presentation of witnesses or written statements against the accused is required to inform the accused, not the captain.

Item (5) of sec. 133(b) requires:

"(5) *Availability to the accused for his inspection of all items of information in the nature of physical or documentary evidence which will be considered.*"

The Trial Commissioner has found that no records of account were presented at the captain's mast, and no receipts, and none was shown to plaintiff. No exception was taken to this finding, and we cannot assume, as defendant argues, "that the papers found in the 'Bible Stand' in front of the Commanding Officer were the documents in question and available to the accused if he requested to inspect them." There is no evidence that plaintiff was advised or knew of any such documents, or that any reference thereto was made by the captain.

Item (6) of sec. 133(b) requires:

"(6) *Full opportunity to the accused to present any matters in mitigation, extenuation, or defense of the suspected offenses.*"

Plaintiff was allowed to present only one of his two witnesses who merely testified that plaintiff was doing his work. He was asked where the $600 specified under Article 134 was. When he replied that he didn't know, but that he thought it was on account of open purchase, the captain profanely replied that they were not talking about open purchase. Later, he was asked if he knew a Mrs. Eichorn, and replied that he did not. Except for this questioning by plaintiff, the Trial Commissioner found that "[n]o person testified before the captain, nor was plaintiff questioned, concerning the charges against plaintiff." No exception was taken to this finding. There is no evidence before us that plaintiff was ever given "full opportunity * * * to present any matters in mitigation, extenuation, or defense of the suspected offenses," as required by sec. 133(b).

In summary, under the inquiry in the court's topic 3, *supra*, we find that the proper procedures for a captain's mast are set forth under items 1 to 6 of sec. 133(b) M.C.M., as hereinabove stated.

As to topic 4, we have stated in detail the particular respects in which the captain's mast departed from the proper procedure. In summary, there was substantial and prejudicial departure from the procedures required under items 2, 4, 5 and 6 of sec. 133(b) M.C.M.

The fifth subject of counsel's supplemental briefing is "[t]he extent to which this court can review (a) the legality of the proceedings of the captain's mast at which non-judicial punish-

362

ment was imposed on plaintiff, and (b) the legality of the punishment itself."

In *Conn, supra*, this court did not specifically inquire as to the *extent* to which the court can review the legality of proceedings under Article 15. The court did refer (376 F.2d at 880, 180 Ct.Cl. at 126) to the "elemental requirements" for an impartial hearing prescribed by para. 133(b) M.C.M. 1951, *supra*. The court then found that "[t]he proceeding before plaintiff's Commanding Officer failed to meet the stated requisites of an impartial hearing in at least two respects" and possibly a third.

The court concluded that:

In view of the noncompliance with controlling regulations, we hold that plaintiff's reduction-in-grade from Sergeant (E–4) to Lance Corporal (E–3) was an invalid imposition of nonjudicial punishment. 376 F.2d at p. 881, 180 Ct.Cl. at p. 127.

Accordingly, we conclude that the extent to which we can review (a) the legality of the proceedings of the captain's mast, as well as (b) the legality of the punishment therefor, is limited in part to a determination of whether there was compliance with the requirements of the statute (Article 15) and the MCM procedural regulations 133(a) and (b). The extent of our review might also extend to flagrant violations of due process which would raise questions which "rise to constitutional level" as required in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). However, we need not raise this question to reach a decision in the present case.

For the reasons hereinabove stated, we conclude that the charges, proceedings and punishment in this case were contrary to the requirements of Article 15, UCMJ, and of sec. 133 M.C.M., and therefore void and invalid. Plaintiff is entitled to recover, and judgment is entered with the amount of recovery to be determined under Rule 131(c) (2).

