Roderick Ray **GROSS**

v.

The **UNITED STATES.**

No. 326–67.

United States Court of Claims.

Feb. 18, 1976.

**484**

Robert H. Reiter, Washington, D.C., attorney of record, for plaintiff, Spaulding, Reiter & Rose, Washington, D.C., of counsel.

LeRoy Southmayd, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D.C., for defendant. Christopher H. Mills, Washington, D.C., of counsel.

Before COWEN, Chief Judge, DAVIS, and KUNZIG, Judges.

## OPINION [*]

DAVIS, Judge.

In 1960, plaintiff, a Ship's Serviceman Second Class in the United States Navy, served as storekeeper of the Special Order Store (i. e. shop for the purchase of foreign goods) on the USS Forrestal during that vessel's Mediterranean cruise. The special order procedure required plaintiff to collect the purchase money and complete an order form in triplicate for each order placed, to give the customer the original of the order form as a receipt, to record each transaction in his order taker's log, and to turn over the money collected and the retained copies of the order forms to the Sales Officer at the end of each day. The customer obtained his merchandise by presenting his original of the order form, to be matched up with a retained copy, when the merchandise arrived. After the termination of the Mediterranean cruise and of the special order operation, certain irregularities in that process came to light; six servicemen presented originals of order forms which had not been recorded in the order taker's log, which did not match any retained copies of order forms, and for which no money had been given the Sales Officer. The unrecorded order forms, for which the servicemen received merchandise and/or refunds out of Sales Office funds, evidenced transactions totaling $1288.60.

After the completion of an investigation, plaintiff was tried by general court-martial on the alternative charges of larceny of $1288.60 in violation of Article 121 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921, and delinquency in the performance of his duties, in negligently failing to account for $1288.60, in violation of Article 92 of the UCMJ, 10 U.S.C. § 892. The court-martial found him guilty of the

former and not guilty of the latter and sentenced him to a bad conduct discharge, reduction to the grade of ship's serviceman seaman recruit, a fine of $1288.60, confinement at hard labor for twelve months, and additional confinement for up to twelve months until the fine was paid. Pursuant to his authority under Article 64 of the UCMJ, 10 U.S.C. § 864, the convening authority reduced the fine to $500 and the maximum period of further confinement in the event of nonpayment of the fine to six months. A Navy Board of Review affirmed the findings and sentence as modified; the Court of Military Appeals denied a petition for grant of review; the Board for Correction of Naval Records rejected plaintiff's application for correction of his military records.

In a suit brought under 28 U.S.C. §§ 1491 and 1495 and now before us on a stipulation of facts,[1] plaintiff seeks to recover pay and allowances, alleging that his conviction and sentence were void because of violations of his constitutional rights. He claims: (1) His conviction was based on an unconstitutional presumption; (2) the admission of incriminatory statements made by him to a superior officer violated his fifth amendment rights; (3) the court-martial lacked jurisdiction under *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), because the money taken was not government property and the merchandise ordered was nonmilitary; (4) the review and approval of the larceny conviction and sentence by the staff legal officer who recommended court-martial for larceny (despite a contrary recommendation by the formal board of investigation) violated due process; and (5) the inclusion in the sentence of an additional term of confinement for nonpayment of the fine violated the eighth amendment. The fifth issue is not actually in this case at all. Plaintiff paid the fine and did not have to serve any portion of the additional term. Therefore, he suffered no injury from and has no standing to challenge the contingent sentence for nonpayment. *See generally*

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217–23, 94 S.Ct. 2925, 2930–33, 41 L.Ed.2d 706 (1974); Davis, *The Liberalized Law of Standing*, 37 U.Chi.L. Rev. 450, 450–58 (1970). We shall deal *seriatim* with plaintiff's four remaining contentions but first consider the Government's argument that we cannot review any of the plaintiff's allegations.

*1.* The Government asserts that the plaintiff waived collateral review when he failed to raise his constitutional claims in the military proceedings. As a general rule, a plaintiff must exhaust military remedies before he can obtain collateral review in this or any civilian court. *See Noyd v. Bond*, 395 U.S. 683, 693–94, 89 S.Ct. 1876, 1882, 23 L.Ed.2d 631, 642–43 (1969); *Gusik v. Schilder*, 340 U.S. 128, 131–32, 71 S.Ct. 149, 151, 95 L.Ed. 146, 150 (1950); *Angle v. Laird*, 429 F.2d 892, 894 (10th Cir. 1970), *cert. denied*, 401 U.S. 918, 91 S.Ct. 90, 27 L.Ed.2d 819 (1971); *Artis v. United States*, 506 F.2d 1387, 1389–90, 205 Ct.Cl. 732, 737–39 (1974); *Hagarty v. United States*, 449 F.2d 352, 355, 196 Ct.Cl. 66, 74 (1971). This general rule of exhaustion does not in itself bar Gross's suit; he sought review from all military courts and boards that could have reviewed his case. The more specific rule urged by the Government—that a plaintiff cannot raise on collateral review an issue not presented in the military fora—finds support in several Tenth Circuit cases and one from the Eighth Circuit. *See King v. Moseley*, 430 F.2d 732, 735 (10th Cir. 1970); *McKinney v. Warden*, 273 F.2d 643, 644 (10th Cir. 1959), *cert. denied*, 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156 (1960); *Suttles v. Davis*, 215 F.2d 760, 763 (10th Cir.), *cert. denied*, 348 U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709 (1954); *Harris v. Ciccone*, 417 F.2d 479, 484 (8th Cir. 1969), *cert. denied*, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970). *But see Kauffman v. Secretary of the Air Force*, 135 U.S.App.D.C. 1, 415 F.2d 991, 996–97 (1969), *cert. denied*, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970); *Gibbs v. Blackwell*, 354 F.2d 469, 471–72 (5th Cir. 1965). We need not decide in this case

---

1. The pertinent facts are sufficiently stated in this opinion.

whether this issue-waiver rule should normally be applied in this court to constitutional challenges. Plaintiff's military counsel, especially his appellate counsel,[2] neither represented plaintiff vigorously nor demonstrated an awareness of possible constitutional arguments, and the issues presented here are substantial constitutional issues which deserve consideration. *Cf. Kauffman v. Secretary of the Air Force, supra; Gibbs v. Blackwell, supra.* Constitutional rights are ordinarily treated as waived only if the Government shows that they were bypassed knowingly and deliberately. *See Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246–47, 16 L.Ed.2d 314, 317 (1966); *Henry v. Mississippi,* 379 U.S. 443, 449–52, 85 S.Ct. 564, 568–69, 13 L.Ed.2d 408, 413–15 (1965). On the record before us we cannot say that plaintiff's (and his counsel's) failures to raise his constitutional issues were knowing and deliberate. Moreover, since we resolve the constitutional issues against the plaintiff, we need not confront the waiver issue as we would have to do before we could grant relief to a plaintiff who possessed valid constitutional claims but had not raised them in the military tribunals. *Cf. Brooks v. Dewar,* 313 U.S. 354, 359–60, 61 S.Ct. 979, 981, 85 L.Ed. 1399, 1402 (1941); *Monett v. United States,* 419 F.2d 434, 435–36, 190 Ct.Cl. 1, 4–5 (1969), *cert. denied,* 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970); *Jones v. United States,* 499 F.2d 631, 205 Ct.Cl. 270 (1974).

*2.* In alleging that he is entitled to back pay because his conviction resulted from the application of an unconstitutional presumption of embezzlement based on custody of and inability to account for funds, plaintiff relies heavily on our decision in *Shaw v. United States,* 357 F.2d 949, 174 Ct.Cl. 899 (1966), *confirmed sub nom. after remand, Gearinger v. United States,* 412 F.2d 862, 864–65, 188 Ct.Cl. 512, 516–17 (1969), in which we granted back pay to a serviceman whose court-martial conviction was premised solely on a presumption of embezzlement where the prosecution proved only a shortage in the funds for which the accused was responsible. Plaintiff's invocation of *Shaw* is misplaced. There the prosecution proved only a shortage in Shaw's funds; the burden then shifted to Shaw, not only to disprove his own fault and negligence, but also to prove affirmatively theft by another or loss through other circumstances beyond his control (*e. g.* fire). As the Government acknowledged, there was no evidence to support a finding of negligence or of conversion by Shaw, and there was a great deal of evidence of Shaw's due care. Shaw clearly was convicted of embezzlement solely on the basis of the shortage in his funds combined with the presumption placing on him the burden to prove the actual cause of the shortage. *Shaw v. United States, supra* at 908–09, 915–16, 357 F.2d at 955–56, 960; *see O'Malley v. United States,* 378 F.2d 401, 403 (1st Cir.), *cert. denied,* 389 U.S. 1008, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967).

■ Gross's case stands on very different footing. No burden, other than that which naturally arises from an accumulation of evidence against an accused, was placed on Gross, and the prosecution presented a great deal of circumstantial evidence probative of his guilt. Gross's acquittal on the negligence charge does not equate with the affirmative finding that Shaw was not negligent; Gross's court-martial had been instructed that it could not convict on both charges, so the acquittal on the lesser charge was the necessary consequence of the conviction on the greater. Further, the law officer at Gross's court-martial resisted the prosecution's attempt to place on Gross the burden to explain (Court-Martial Appellate Exhibit 3 at 1, Defendant's Exhibit 4 at

---

2. Plaintiff's appellate counsel first requested an enlargement of time in which to file pleadings, on the ground that his heavy caseload would prevent him from properly representing plaintiff if he had to file pleadings within the prescribed 11 days. Thereafter, the appellate counsel filed only a cursory "Petition for Re-

mission of Punitive Discharge." Gross's petition for review by the Court of Military Appeals was simply a form, the blanks of which were filled in by Gross, unaccompanied by any specifications of errors or other material indicating review of the record and advice by counsel. *See* Defendant's Exhibit 4 at 19, 16–17, 5.

398) and carefully limited the "presumption" in his instruction:

> The existence of the *intent to steal* ordinarily cannot be proved by direct evidence unless, for example, the accused has been overheard to express that intent; but you are advised that intent may be proved by facts and circumstances from which, alone or in connection with other facts, you may, after applying your common sense and your general knowledge of human nature and the ordinary affairs of life, reasonably infer the existence of such an intent. Thus, it may be justifiably inferred that one who has assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required. However, the *inference* which may be drawn from a custodian's failure to account for or deliver entrusted property at the time an accounting or delivery is required *is not mandatory*, and *it can be rejected or accepted as you see fit.*

Transcript of Court-Martial at 113, Defendant's Exhibit 4 at 346 (emphasis added).

■ This instruction, similar to ones we noted with approval in *Shaw* (174 Ct.Cl. at 918–19, 357 F.2d at 962), states a permissive inference the constitutionality of which must be tested under standards delineated by the Supreme Court. Under the most stringent formulation of the test, an inference satisfies due process if it satisfies the reasonable-doubt standard—that is, if "the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt." *Barnes v. United States*, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380, 386 (1973). *See generally id.* at 841–47, 93 S.Ct. at 2360–63, 37 L.Ed.2d at 384–88 and cases

cited. Following the example of the Supreme Court in *Barnes* (*cf. id.* at 845–46, 93 S.Ct. at 2362–63, 37 L.Ed.2d at 387), we have reviewed the evidence against Gross. The prosecution proved, *inter alia*, that Gross had signed all the unrecorded forms, that at least one unrecorded order had been placed late in the evening just before the store closed and just before Gross was to record the day's transactions in his log and turn in the money, that on three of the six unrecorded order forms there was no serial number (contrary to the normal practice), while on the other three the numbers duplicated those given on recorded orders, that no orders and money were "lost" during the periods when Gross had an assistant in the store, that Gross had a safe in the special order store, that only Gross handled the money until it was given to the Sales Officer or the Sales Officer's assistant, that the Sales Officer's assistant gave Gross a receipt when Gross gave him the money, and that the Sales Officer's log matched Gross's log, which Gross completed before he gave orders and money to the Sales Officer. We conclude that this evidence supported a finding of larceny beyond a reasonable doubt. The "presumption" passes constitutional muster.

■ *3.* The second challenge, directed against the admission into evidence of certain incriminatory statements, must also fail. In contending that the circumstances under which he made the statements negatived his free will, plaintiff in effect acknowledges that their admission violated his constitutional rights only if the statements were involuntary.[3] *See, e. g., Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1961); *Developments in the Law—Confes-*

---

**3.** Although plaintiff's formulation of the question is confusing, we do not read his argument as a contention that the admission of the statements violated either Article 31 of the UCMJ (10 U.S.C. § 831) or *Miranda v. Arizona*, 384 U.S. 436, 444–45, 478–79, 86 S.Ct. 1602, 1612, 1629–30, 16 L.Ed.2d 694, 706–07, 725–26 (1966). We could not review a challenge based on Article 31 alone because such a challenge would address a mere error of law. *Narum v.*

*United States*, 287 F.2d 897, 898–99, 151 Ct.Cl. 312, 315 (1960), *cert. denied*, 368 U.S. 848, 82 S.Ct. 80, 7 L.Ed.2d 46 (1961). Plaintiff could not found a challenge on *Miranda* because *Miranda* is not retroactive (*Johnson v. New Jersey*, 384 U.S. 719, 721, 732, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882, 891 (1966)) and therefore does not apply to a court-martial that took place in 1961.

*sions,* 79 Harv.L.Rev. 935, 963 (1966). Although "voluntariness" is not a test easily applied or one providing quick and absolute answers to questions of admissibility, our examination of the circumstances surrounding Gross's statements and of other cases dealing with voluntariness leads to the certain conclusion that the challenged statements were admissible. A superior officer, Chief Scarselletta, called Gross into his office after the former had received the first unrecorded order form and had conducted an unsuccessful search for a matching retained copy and an entry in Gross's log. In the presence of another officer, Scarselletta asked Gross a few questions, in response to which Gross acknowledged that the signature on the unrecorded form was his, declined to double-check his log, said he guessed that he had "fouled up," and offered to pay the deficit. We perceive no coercion or negation of free will in this simple and limited questioning by one who was not a law enforcement officer and who did not consider Gross a suspect,[4] at a time when only the first clue of possible wrongdoing had come to light. Nor have we found any decision that would support plaintiff's allegation that his statements were not the product of his free will; the cases focus on unfair tactics of police officers, the degree and duration of external pressure on the suspect or accused, and the capacity of the suspect or accused to resist pressure. *See Miranda v. Arizona,* 384 U.S. 436, 507–09, 86 S.Ct. 1602, 1644–46, 16 L.Ed.2d 694, 742–43 (1966) (Harlan, J., dissenting); *Culombe v. Connecticut, supra,* 367 U.S. at 601–02, 622–31, 81 S.Ct. at 1889–94, 6 L.Ed.2d at 1068–74; *Pea v. United States,* 130 U.S.App.D.C. 66, 397 F.2d 627, 632–34 (1967); 3 J. Wigmore, Evidence § 826, at 352–54 & n.11 (rev.ed.1970); *Developments in the Law—Confessions, supra* at 962–84. The subjective pressure Gross may have felt when questioned by a superior officer in the presence of another superior officer is not sufficient in itself to render the statements involuntary. Unlawful pressure need not be inferred where the statements are the product of the sense of duty of an adult who is not in custody and is not a suspect. *See Pea v. United States, supra* at 634. Even Article 31 of the UCMJ, 10 U.S.C. § 831, which has long contained special provisions designed to protect servicemen from the pressure inherent in the military situation (*see Developments in the Law —Confessions, supra* at 1086–87), limits the application of its special requirements to the questioning of "a person suspected of an offense."

█ *4.* Relying on *O'Callahan v. Parker,* 395 U.S. 258, 272, 274, 89 S.Ct. 1683, 1690, 1691, 23 L.Ed.2d 291, 301, 302 (1969), plaintiff disputes the jurisdiction of the court-martial on the ground that the offense of which he was convicted was not service-connected. We can bypass the question whether there could be any doubt about the service connection of a crime committed on board a Navy ship outside the territorial limits of the United States by a serviceman who acted while engaged in his military duties and in transactions with other servicemen who subsequently received property or money from the Navy. The simplest dispositive point is that *O'Callahan* is not to be applied retroactively. *See Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Augenblick v. United States,* 206 Ct.Cl. 74, 77, 509 F.2d 1157, 1159 (1975), *cert. denied,* 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975).

█ *5.* The last issue, an allegation that the review and approval of the conviction and sentence by the staff legal officer who initially recommended court-martial for larceny violated due process, is similar to the question in *McDonald & Sanders v. United States,* Ct.Cl., 531 F.2d 490 decided today. Gross does not contend that this staff legal officer was actually biased but

---

4. In his carefully probed testimony accepted by the law officer, Scarselletta emphatically stated that he did not suspect Gross when he called Gross in for questioning. Scarselletta had a high regard for Gross and had recommended Gross for the storekeeper's job. Court-Martial Appellate Exhibit 1 at 4–16, Defendant's Exhibit 4 at 383–95; Transcript of Court-Martial at 25–28, Defendant's Exhibit 4 at 258–261.

instead simply urges us to declare the conviction void because he might conceivably have been biased. In *McDonald & Sanders, supra,* and in *Jones v. United States,* 205 Ct.Cl. 270, 499 F.2d 631 (1974), we held that we would not assume unfairness or prejudice to a court-martial defendant from the mere existence of a legislative system giving the convening authority multiple roles, including roles as referrer of charges, selector of the trial and defense counsel and of the court-martial members, and reviewer of conviction and sentence. The reasons for our refusal to assume prejudicial effect are stronger in this case, where plaintiff has challenged not the convening authority's position but that of the staff legal officer who merely advised the convening authority on the law at two important stages of the court-martial proceedings. Congress, which at least twice has given serious consideration to complaints about command influence and the convening authority's roles but has not noted any complaints about the staff legal officer's or judge advocate's functions, has incorporated into the UCMJ safeguards designed to protect the rights of suspects and accuseds, especially from the prejudicial exercises of command influence by the convening officer. *See, e. g.,* 10 U.S.C. §§ 806(b), (c) (convening authorities shall communicate with staff judge advocate or legal officer on matters relating to military justice; one who played a role in investigation or trial may not later serve as staff judge advocate or legal officer to reviewing authority); *id.* §§ 825(c)(1), (d)(2) (convening authority must appoint to the court those who are best qualified for the duty and may not appoint any interested person or participant; accused may request that general or special court-martial include enlisted members); *id.* § 827 (limitations on whom convening authority may detail as counsel in general or special court-martial); *id.* § 831 (prohibition of compulsory self-incrimination and exclusionary rule); *id.* § 832(a) (a thorough and impartial investigation must be conducted before any charge is referred to a general court-martial); *id.* § 834(a) (convening authority shall refer charge to be tried by general court-

martial to staff judge advocate or legal officer for advice before directing trial); *id.* § 837 (no one may take action that would influence action of court or punish court members or counsel for actions); *id.* § 854 (record must be kept, and a copy of each special or general court-martial record must be given the accused as soon as authenticated); *id.* § 861 (after receiving general court-martial record for review, convening authority must refer it to his staff judge advocate or legal officer for an opinion); *id.* §§ 862–64 (on review, convening authority may not enlarge conviction or sentence and may not order a case reconsidered or reheard for the p urpose of altering any finding of not guilty or enlarging sentence); *id.* §§ 865(b), 866(b), (c), (review by Court of Military Review; mandatory in cases involving certain officers or certain levels of punishment); *id.* §§ 867(b)–(d) (review by Court of Military Appeals); *id,* § 898 (failure to comply with or enforce a procedural rule is a punishable offense); S.Rep.No. 1601, 90th Cong., 2d Sess. (1968), *in* 1968 U.S.Code Cong. & Admin.News, pp. 4501, 4502, 4503–04, 4509 (Congress strengthened section 837 prohibition of influencing action of court, but did not change provisions relating to review of record); S.Rep.No.486, 81st Cong., 2d Sess. (1950), *in* 1950 U.S.Code Cong.Serv. pp. 2222, 2227 (those who attacked command influence focused on the dangers inherent in the authority to appoint the members of the court and conceded that the commander should have the right to refer charges, select counsel, and review the case after trial; Congress believed that the safeguards built into the system would adequately protect servicemen).

We cannot say, in the absence of proof particular to this case or some general demonstration of the injurious impact of the provisions, that these safeguards are inadequate to protect against any improper action by the staff legal officer, who merely advises on the law and can himself exert no command influence on the court-martial. We therefore have no justification in this case for invalidating a conviction where the staff legal officer acted well within the

bounds of the system containing these safeguards; without far greater proof than plaintiff has proffered, we cannot invalidate a conviction where all requirements of a statutory system carefully devised by Congress and approved generally by the Supreme Court were met. *McDonald & Sanders v. United States, supra; see Schlesinger v. Councilman,* 420 U.S. 738, 757–58, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591, (1975); *Burns v. Wilson,* 346 U.S. 137, 140–41, 73 S.Ct. 1045, 1047–48, 97 L.Ed. 1508, 1513–14 (1953); S.Rep.No.486, *supra. See also United States v. Augenblick,* 393 U.S. 348, 356, 89 S.Ct. 528, 21 L.Ed.2d 537, (1969), which indicates that we must be certain that an infirmity rises to the level of a constitutional violation before we consider voiding a court-martial conviction. A plaintiff in this court must make some showing, not merely an allegation, that the staff legal officer's fulfillment of his advisory functions led to unfairness or that the system is inherently unfair. *McDonald & Sanders v. United States, supra; cf. Gallagher v. United States,* 191 Ct.Cl. 546, 556–58, 423 F.2d 1371, 1377–78, *cert. denied,* 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86 (1970) (mere assertion of conflict of interest is insufficient); *Flackman v. Hunter,* 75 F.Supp. 871, 877–78 (D.Kan.1948), *appeal dismissed,* 173 F.2d 899 (10th Cir. 1949) (summary rejection of contention that dual role of staff judge advocate under Articles of War violated due process).[5]

In accordance with our conclusion that none of the issues raised by plaintiff infringes a constitutional right, we hold for the defendant, decide that plaintiff is not entitled to recover, and dismiss the petition.

## CONCLUSION OF LAW

For these reasons, it is held that the plaintiff is not entitled to recover and his petition is dismissed.

---

5. Likewise relevant is *Withrow v. Larkin,* 421 U.S. 35, 46–47, 54–55, 58, 95 S.Ct. 1456, 1464–65, 1468–69, 1470, 43 L.Ed.2d 712, 723–24, 727–28, 729–30 (1975), refusing to hold that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication (the agency involved was a state examining board for physicians).